**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

FAUSTINO GOMEZ,
*Defendant-Appellant*.

No. 11-30262

D.C. No.
2:11-cr-06004-
LRS-1

ORDER AND
OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, District Judge, Presiding

Argued and Submitted
February 4, 2013—Seattle, Washington

Filed April 24, 2014

Before: Raymond C. Fisher, Ronald M. Gould,
and Richard A. Paez, Circuit Judges.

Order;
Opinion by Judge Paez

## SUMMARY[*]

### Criminal Law

The panel withdrew an opinion filed October 7, 2013, filed a new opinion, and denied as moot the defendant's petition for panel rehearing and rehearing en banc in an appeal from an illegal reentry conviction and sentence.

In the new opinion, the panel affirmed the conviction, vacated the sentence, and remanded for resentencing.

The panel held that the underlying removal was invalid for two independent reasons: (1) the stipulated removal proceeding violated the defendant's right to due process because he was denied his right to appeal the removal order, and (2) the immigration judge violated 8 C.F.R. § 1003.25(b) by finding the defendant's waiver of rights "voluntary, knowing, and intelligent" on the basis of an insufficient record. The panel nonetheless affirmed the conviction because the violations were harmless given that the defendant was ineligible for voluntary departure at the time of the removal proceeding.

The panel held that the defendant's prior conviction for sexual conduct with a minor under Ariz. Rev. Stat. § 13-1405 did not constitute a "crime of violence" within the meaning of U.S.S.G. § 2L1.2(b)(1)(A)(ii). The panel held that § 13-1405, including the version for offenses against victims "under fifteen," is not categorically a "crime of violence"

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

because it is missing an element of the generic offenses of sexual abuse and statutory rape, and the district court's finding to the contrary was reversible error. The panel answered in the affirmative the previously-open question whether a four-year age difference is an element of generic statutory rape. Because § 13-1405 is missing an element of these generic crimes, the panel did not undertake the modified categorical analysis. The panel rejected the government's argument that the sentencing error was harmless.

## COUNSEL

Rebecca L. Pennell (argued), Federal Defenders of Eastern Washington & Idaho, Yakima, Washington, for Defendant-Appellant.

Alexander C. Ekstrom (argued), United States Attorney's Office for the Eastern District of Washington, Yakima, Washington, for Plaintiff-Appellee.

## ORDER

The opinion filed on October 7, 2013 and reported at 732 F.3d 971 is withdrawn. The opinion shall not be cited as precedent by or to any court of the Ninth Circuit. It is replaced by the new opinion filed concurrently with this order.

With the withdrawal of the prior opinion, the Appellant's Petition for Panel Rehearing and Rehearing En Banc is denied as moot. A petition for rehearing may be filed in

response to the new opinion as provided by Federal Rules of Appellate Procedure 35 and 40.

**OPINION**

PAEZ, Circuit Judge:

Faustino Gomez appeals the district court's denial of his motion to dismiss the indictment charging him with illegal reentry under 8 U.S.C. § 1326. Gomez argues that his underlying 2006 removal was invalid because the stipulated removal proceeding violated his right to due process and denied him an opportunity to seek voluntary departure. We hold that the removal was invalid for two independent reasons: (1) the stipulated removal proceeding violated Gomez's right to due process because he was denied his right to appeal the removal order, and (2) the Immigration Judge ("IJ") violated 8 C.F.R. § 1003.25(b) by finding Gomez's waiver of rights "voluntary, knowing, and intelligent" on the basis of an insufficient record. Nonetheless, we affirm Gomez's § 1326 conviction because the violations were harmless given that Gomez was ineligible for voluntary departure at the time of the 2006 proceeding.

Gomez also challenges the district court's imposition of a sixteen-level sentencing enhancement. He argues that his 2004 conviction for sexual conduct with a minor under Arizona Revised Statute section 13-1405 does not constitute a "crime of violence" as defined by United States Sentencing Guidelines Manual ("U.S.S.G.") § 2L1.2(b)(1)(A)(ii). We agree. We hold that § 13-1405, including the version for offenses against victims "under fifteen," does not

categorically meet the generic definition of "sexual abuse of a minor" or of "statutory rape." After *Descamps v. United States*, 133 S. Ct. 2276 (2013), we no longer analyze a statute missing an element of a generic offense, as here, under the modified categorical approach. Thus, we vacate Gomez's sentence and remand for resentencing.

## I. BACKGROUND

### A.

In January 2004, Gomez was indicted on three counts of violating Arizona Revised Statute section 13-1405 for sexual conduct with a minor who was under the age of fifteen. Count one charged Gomez with digitally penetrating the victim, and Counts two and three charged him with having sexual intercourse with her. In September 2004, Gomez signed a plea agreement, pleading guilty to two counts of "Attempted Sexual Conduct with a Minor Under the Age of 15" in violation of § 13-1001 (attempt) and § 13-1405 (sexual conduct with a minor). In November 2004, Gomez was sentenced to a term of imprisonment, not to be released until January 16, 2006.

On January 17, 2006, the immigration authorities served Gomez, who was in Immigration and Customs Enforcement's ("ICE") custody, with a Notice to Appear ("NTA"). Gomez signed and returned a "request for prompt hearing." The NTA included the allegation that he had been convicted of the § 13-1405 offenses. ICE transferred Gomez to Eloy Detention Center where he received, on January 19, 2006, a revised NTA that omitted any reference to his past conviction. Gomez again signed a "request for prompt hearing." While Gomez was in a cell with other aliens, an

immigration official read to them *en masse* a Stipulated
Removal form in Spanish.   Gomez does not remember
whether he had a copy of the form when it was read to the
group.  After the *en masse* reading, Gomez met individually
with an immigration officer who told Gomez that he could be
removed immediately if he signed the form.  Gomez claims
that during the individual meeting, "the form was not
reviewed again, and [he] did not read the form."  The whole
process lasted less than forty-five minutes.  Gomez signed the
preprinted form, which contained both English and Spanish
statements waiving Gomez's rights to counsel, ¶4, to a
hearing before an IJ, ¶5, to any form of relief (including
voluntary departure), ¶8, and to appeal, ¶13.   Without a
hearing, the IJ issued a two paragraph decision and order on
January 20, 2006, finding Gomez's uncounseled waiver of
rights to be "voluntary, knowing, and intelligent."  Gomez
was removed to Mexico via Nogales, Arizona that same day.

**B.**

On December 23, 2010, Gomez was arrested for driving
under the influence of alcohol in Washington state.  A day
later, an ICE agent located Gomez in the Franklin County Jail
in Washington.  Gomez was indicted on January 11, 2011, for
illegal reentry in violation of 8 U.S.C. § 1326.[1]   Gomez

---

[1]  8 U.S.C. § 1326(a) provides that "any alien who–(1) has been denied
admission, excluded, deported, or removed . . . and thereafter (2) enters,
attempts to enter, or is at any time found in, the United States [barring
some exceptions] . . . shall be fined under Title 18, or imprisoned not more
than 2 years [subject to enhanced penalties under § 1326(b)], or both."

We have recognized that "the Illegal Immigration Reform and
Immigrant Responsibility Act of 1996 ('IIRIRA') amended the
immigration statutes so as to eliminate the previous legal distinction

moved to dismiss the indictment on the ground that the underlying stipulated removal proceeding was invalid. The district court denied the motion. A week later, Gomez filed a motion for reconsideration along with a declaration, stating, *inter alia*, that he had not understood the stipulated removal proceeding.[2] Although the district court denied Gomez's motion for reconsideration, the court characterized the validity of Gomez's removal proceeding as "a close question." Gomez entered a guilty plea, reserving his right to appeal the denial of his motion to dismiss the indictment.

The probation officer prepared a pre-sentence report ("PSR") and recommended a total offense level of twenty-two. The total offense level included a sixteen-level enhancement based on the probation officer's determination that Gomez had been previously deported after being convicted of a "crime of violence" as defined by U.S.S.G. § 2L1.2(b)(1)(A)(ii). The PSR assigned Gomez six criminal history points, for a criminal history category of III, and a Guidelines sentencing range of fifty-one to sixty-three months imprisonment. Without the sixteen-level enhancement, the sentencing range for Gomez would likely

---

between deportation, removal and exclusion, merging all of these proceedings into a broader category entitled 'removal proceedings.'" *United States v. Lopez-Gonzalez*, 183 F.3d 933, 934 (9th Cir. 1999) (footnote omitted) (citing *United States v. Pantin*, 155 F.3d 91, 92 (2d Cir. 1998)). We refer to Gomez's "removal" proceedings, though we note that 8 U.S.C. § 1326(d) and other cases we cite sometimes refer to "deportation" proceedings. "[A]ny distinction between deportation and removal is legally insignificant for purposes of § 1326." *Id*. at 935.

[2] According to the pre-sentence report prepared for sentencing, Gomez completed the sixth grade in Mexico and is able to read and write in Spanish, but unable to communicate in English.

have been ten to sixteen months. *See* United States Sentencing Commission Guidelines Manual, Sentencing Table (Nov. 1, 2010).**[3]**

On September 8, 2011, the district court conducted a hearing on objections to the PSR. Gomez's primary objection was to the sixteen-level sentencing enhancement for his 2004 § 13-1405 conviction. Gomez argued that the conviction did not qualify as a "crime of violence" under the categorical or modified categorical approaches.

On September 15, 2011, the district court conducted a sentencing hearing. The district court acknowledged the PSR's recommended Guidelines sentencing range of fifty-one to sixty-three months, and found that Gomez's § 13-1405 conviction was "in fact categorically statutory rape," which is a "crime of violence" under § 2L1.2(b)(1)(A)(ii). The district court also conducted an alternative analysis, assuming that the generic definition of "statutory rape" included a four-year age differential, and found that Gomez satisfied this element because the court could consider Gomez's age at the time of the § 13-1405 conviction given that his date of birth appeared on the "judgement [sic] paperwork." Finally, the district court noted several reasons for imposing a below-Guidelines sentence. It also noted that it would likely have given the same sentence even if it erred in applying the sixteen-level enhancement. The district court then imposed

---

**[3]** The PSR used the 2010 United States Sentencing Commission Guidelines Manual. Pursuant to § 2L1.2(b)(1)(D), if Gomez's Arizona conviction had not qualified as a crime of violence, his base offense level likely would have been increased by only four levels, rather than sixteen, yielding a total offense level of ten, rather than twenty-two.

a sentence of twenty-two months imprisonment and three years of supervised release.

## II.  JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review a final judgment of the district court pursuant to 28 U.S.C. § 1291.  "We review *de novo* a claim that a defect in a prior removal proceeding precludes reliance on the final removal order in a subsequent § 1326 proceeding." *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1042 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 322 (2012).  "We review the district court's findings of fact for clear error.  We may affirm a district court's denial of a motion to dismiss an indictment on any basis supported by the record." *Id.* (citation omitted).

"We review de novo the district court's interpretation of the Sentencing Guidelines," *United States v. Rodriguez-Ocampo*, 664 F.3d 1275, 1277 (9th Cir. 2011) (quoting *United States v. Berger*, 587 F.3d 1038, 1041 (9th Cir. 2009)) (internal quotation marks omitted), including a "district court's determination that a prior conviction qualifies as a 'crime of violence' under the Guidelines," *United States v. Rodriguez-Guzman*, 506 F.3d 738, 740–41 (9th Cir. 2007) (citing *United States v. Rivera-Sanchez*, 247 F.3d 905, 907 (9th Cir. 2001) (en banc)).

## III.  DISCUSSION

### A.  Conviction

When an alien defendant is prosecuted for illegal reentry under 8 U.S.C. § 1326, he may not collaterally attack the

underlying deportation order "unless the alien demonstrates" that:

> (1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d); *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1129–30 (9th Cir. 2013). "An underlying removal order is 'fundamentally unfair' if: '(1) [a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.'" *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (alteration in original) (quoting *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998)).

A defendant can establish the first two prongs of § 1326(d) by showing that he was denied judicial review of his removal proceeding in violation of due process. *See Reyes-Bonilla*, 671 F.3d at 1043; *Ubaldo-Figueroa*, 364 F.3d at 1049–50. Due process requires that

> [W]here a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding. This principle means at the very least that where the defects in an administrative proceeding

foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense.

*United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987) (footnote omitted) (citations omitted); *see also United States v. Lopez-Vasquez*, 1 F.3d 751, 753 (9th Cir. 1993).

A defendant can also satisfy the first two prongs of § 1326(d) by showing that immigration officials in the underlying removal proceeding violated a regulation designed to protect an alien's right to judicial review. *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1084–85 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1983 (2012). "[T]he Supreme Court has ruled that when Congress enacts a procedure, aliens are entitled to it." *Id.* (citing *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.")); *see also United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations." (quoting *Ramon-Sepulveda v. INS*, 743 F.2d 1307, 1310 (9th Cir. 1984)) (internal quotation marks omitted)).

Once a due process or a qualifying regulatory violation has been established, we evaluate the third prong of § 1326(d) (that the deportation order was "fundamentally unfair") as a "prejudice" inquiry. *See Reyes-Bonilla*, 671 F.3d at 1039 (noting that we have long held that "a defendant seeking to exclude evidence of a prior removal order in a prosecution for illegal reentry" must demonstrate a due process violation and

"'bears the burden of proving prejudice.'" (quoting *United States v. Proa-Tovar*, 975 F.2d 592, 595 (9th Cir. 1992) (en banc) and citing 8 U.S.C. § 1326(d)(3))); *see also United States v. Rangel-Gonzales*, 617 F.2d 529, 530 (9th Cir. 1980) (explaining that for the purposes of a § 1326 prosecution we conduct a two-step inquiry to determine if a regulatory violation invalidates an underlying removal order: (1) "the regulation itself must serve a purpose of benefit to the alien" and (2) the violation must have "prejudiced interests of the alien which were protected by the regulation" (internal quotation marks omitted)).

Here we conclude that Gomez's 2006 deportation was invalid for two independent reasons. First, Gomez was denied his right to appeal his removal order in violation of due process because immigration officials failed to obtain a knowing waiver of that right. Second, the IJ who ordered Gomez removed violated 8 C.F.R. § 1003.25(b) by finding that Gomez's waiver of his rights was "voluntary, knowing, and intelligent" when there was an insufficient factual basis for such a finding. However, we affirm the denial of Gomez's motion to dismiss the § 1326 conviction because he cannot show that he was prejudiced by these violations given that he was ineligible for any form of relief at the time of the 2006 proceeding.

### 1. Violations

### a. Invalid Waiver

Obtaining an invalid waiver of the right to appeal a deportation order violates due process. *Lopez-Vasquez*, 1 F.3d at 753–54 ("Although a deportee may waive his right to judicial review of his deportation order, that waiver must

be considered and intelligent. Otherwise, the deportee is deprived of judicial review in violation of due process." (internal quotation marks omitted) (quoting *Mendoza-Lopez*, 481 U.S. at 837–38)). Thus, although "an alien cannot collaterally attack an underlying deportation order if he validly waived the right to appeal that order," *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000), "[a] valid waiver of the right to appeal 'must be both considered and intelligent,'" *Ramos*, 623 F.3d at 680 (quoting *Arrieta*, 224 F.3d at 1079) (additional internal quotation marks omitted).

The first two prongs of § 1326(d) are satisfied if the right to appeal was denied in violation of due process. *See Reyes-Bonilla*, 671 F.3d at 1043 ("If Reyes did not validly waive his right of appeal, the first two requirements under § 1326(d) will be satisfied."); *Ubaldo-Figueroa*, 364 F.3d at 1049–50; *see also Gonzalez-Villalobos*, 724 F.3d at 1130–31 & n.7.

At the time of his removal proceeding, Gomez signed a Stipulated Removal form, printed in English and Spanish, waiving his right to appeal the deportation order. Gomez argues that because he contests the validity of his waiver, the government's reliance on that form—without more—is insufficient to prove by "clear and convincing evidence" that his waiver was valid. Guided by *Ramos* and *Reyes-Bonilla*, we agree.

The parties begin by debating who bears the burden of proving the validity of Gomez's waiver. Under the same circumstances as those in this case, we have said unmistakably that "[t]he government bears the burden of proving valid waiver in a collateral attack of the underlying removal proceedings." *Ramos*, 623 F.3d at 680 (citing *Lopez-Vasquez*, 1 F.3d at 754–54); *see also Reyes-Bonilla*, 671 F.3d

at 1043.  The government must prove a valid waiver "by clear and convincing evidence."  *Reyes-Bonilla*, 671 F.3d at 1043 (citing *United States v. Pallares-Galan*, 359 F.3d 1088, 1097 (9th Cir. 2004)).

We find unavailing the government's argument that *United States v. Medina*, 236 F.3d 1028, 1030 (9th Cir. 2001), is to the contrary.  In *Medina*, the defendant argued that the government could not prove that he had in fact been deported without a tape recording of the deportation proceeding.  *Id.* We noted that "the lawfulness of the prior deportation is not an element of the offense under § 1326."  *Id.* (quoting *United States v. Delgado*, 98 F.3d 492, 493 (9th Cir. 1996)) (internal quotation marks omitted).  Thus, in establishing the fact of a prior deportation as an element of an illegal reentry offense, "[t]he government merely needs to prove that [the defendant] was in fact previously deported."  *Id*.  Gomez does not challenge the government's ability to prove that he was in fact deported.  Rather, Gomez argues under a separate provision of the statute—§ 1326(d)—that his deportation was invalid.  In spelling out the elements of an illegal reentry offense in *Medina*, we did not silently overrule our prior precedent holding that "[t]he government bears the burden of proving the waiver."  *Lopez-Vasquez*, 1 F.3d at 754 (citing *Brewer v. Williams*, 430 U.S. 387, 404  (1977) ("[I]t [is] incumbent upon the State to prove an intentional relinquishment or abandonment of a known right or privilege." (internal quotation marks omitted))).[4]

---

**4**  Nor did *Medina* overrule our long-established precedent merely by saying that "[i]n order to collaterally attack his prior deportation, Medina *must show* that the deportation hearing was fundamentally unfair and that he was prejudiced by the error."  236 F.3d at 1031 (emphasis added).  At most, this statement merely reiterates the statutory requirement that the

As *Ramos* emphasized, this court should "'indulge every reasonable presumption against waiver,'" and should "'not presume acquiescence in the loss of fundamental rights.'" 623 F.3d at 680 (quoting *Lopez-Vasquez*, 1 F.3d at 75[4]); *see also Reyes-Bonilla*, 671 F.3d at 1044. We carefully abide by this principle, especially where an *uncounseled* individual purportedly waived his right to appeal.

Where an alien defendant (1) was represented by counsel at his deportation proceeding and (2) did not allege facts undermining the validity of his waiver, we held that the government met its initial burden of proving a valid waiver by introducing an official immigration record. *United States v. Galicia-Gonzalez*, 997 F.2d 602, 603–04 (9th Cir. 1993). We stated that "where the government introduces official records which on their face show a valid waiver of rights in connection with a deportation proceeding, the burden shifts to the defendant to come forward with evidence tending to prove the waiver was invalid." *Id*. at 604. There, Galicia-Gonzalez's counsel signed a waiver of rights form "along with a declaration that she fully explained the contents of the agreement to him and that he entered it with full knowledge." *Id.* at 603. And Galicia-Gonzalez did "not even allege[] there was anything wrong with his deportation, *i.e.*, that his rights were improperly explained or that he was coerced into waiving them. The government's prima facie showing thus stands unchallenged and this satisfies the government's burden of showing a valid deportation for purposes of section 1326." *Id*. at 604.

---

alien "demonstrate" the prongs of § 1326(d) and prove prejudice. *See Reyes-Bonilla*, 671 F.3d at 1039.

*Galicia-Gonzalez* is not controlling here for two independent reasons: (1) Gomez was not represented by counsel at his removal proceeding, and (2) Gomez contested the validity of his waiver and alleged facts supporting its invalidity in the district court when prosecuted for illegal reentry. First, *Ramos* explicitly held that the district court erred by relying on *Galicia-Gonzalez* to shift the burden to Ramos, because Galicia-Gonzalez was represented at his deportation proceeding while Ramos was not. *Ramos*, 623 F.3d at 680 (noting "that the district court erred in concluding that the validity of Ramos's stipulated removal order was controlled by our decision in *Galicia-Gonzalez*" because "unlike the petitioner in *Galicia-Gonzalez*, who had received a full explanation of a stipulated removal agreement from his counsel, and who had entered into the stipulation through counsel, Ramos lacked the benefit of legal representation"). Second, when a defendant in a § 1326 prosecution contests the validity of his waiver of the right to appeal his deportation order, we have held that the government's introduction of an official document signed by the defendant waiving his right to appeal is insufficient to meet the government's burden of proving a valid waiver. *Reyes-Bonilla*, 671 F.3d at 1043–45 (noting that the district court's finding of valid waiver "would be sound if Reyes had not contested his understanding of the notice" but holding that the signed notice was inadequate to meet the government's burden where Reyes testified in district court that he had lacked understanding of the removal proceedings).

The circumstances underlying the stipulated deportation in *Ramos* are strikingly similar to the circumstances here. Like Ramos, Gomez was unrepresented and, like Ramos, was deported pursuant to a stipulated removal proceeding at the Eloy, Arizona detention facility. *See Ramos*, 623 F.3d at 677.

Ramos signed the same stipulation as Gomez. The preprinted stipulation form contains both English and Spanish statements that waive the alien's rights to counsel, ¶4, to a hearing before an IJ, ¶5, to any form of relief (including voluntary departure), ¶8, and to appeal, ¶13. In *Ramos*, we described the process for stipulated removal proceedings at Eloy:

> After detainees are selected for participation in the stipulated removal program, deportation officers typically prepare an NTA and a Stipulated Removal form for each individual. Deportation officers then gather detainees selected for the program for a group presentation. There, an immigration enforcement agent explains in Spanish that a detainee has two options: first, to accept stipulated removal, or second, to appear before an IJ, where the detainee may ask to remain legally in the United States or seek voluntary departure. The agent also advises the group that under the stipulated removal program, a detainee can be removed that very day; whereas it could take anywhere from two to three weeks or longer to appear before an IJ if the detainee chooses not to sign the form. The agent then reads the text of the Stipulated Removal form aloud in Spanish, and concludes the presentation. Next, DHS deportation officers meet individually with each detainee to determine whether he or she wants to sign the Stipulated Removal form. Deportation officers do not review the detainee's A-file at any time before or during

the individual meeting.    No transcriber,
interpreter, or attorney is present during the
detainee's individual meeting with the
deportation officer.

*Id*. at 678.   This description is consistent with the record in
this case, in particular Gomez's sworn declaration.

In *Ramos*, we described the testimony of the immigration
officer who met individually with Ramos after the *en masse*
reading, and we noted her limited Spanish language skills.
623 F.3d at 678–79.  We concluded that "Ramos's waiver of
his right to appeal was invalid for several independent
reasons" including because his waiver "was not 'considered
or intelligent' because he did not receive a competent Spanish
language translation of his right to appeal when he signed the
form."  *Id*. at 680.

We are not persuaded by the government's argument that
*Ramos* relied on the incompetence of the immigration
officer's individual translation.  This argument improperly
shifts the burden to the alien defendant to prove an
incompetent explanation of the alien's rights; however, the
burden to prove a competent explanation, and thus valid
waiver, rests with the government.  "We cannot conclude that
waiver of rights, including the right to appeal, was
'considered or intelligent' *without evidence* that a detainee
was 'able to understand the questions posed to him' when put
to the choice of foregoing all rights or remaining in detention
until he could appear before an IJ."  *Ramos*, 623 F.3d at 681
(emphasis added) (citing *Perez-Lastor v. INS*, 208 F.3d 773,
778 (9th Cir. 2000)).    The fact that Ramos signed a

stipulation indicating his understanding and waiver, and that the IJ found his waiver to be "voluntary, knowing, and intelligent," *id.* at 679, was insufficient to meet the government's burden of proof; and the government offers nothing more here. *See also Reyes-Bonilla*, 671 F.3d at 1044–45 (concluding that the government failed to meet its burden of proving a valid waiver where the evidence was "unclear" as to whether the immigration officer explained to Reyes "in a language he could understand" his right to appeal and there was "no evidence as to the extent of the explanation given or [the immigration officer's] ability to communicate in Spanish").

Thus, we see no reason to distinguish *Ramos*. If anything, there is more evidence here that Gomez had difficulty understanding the stipulated removal proceeding. Gomez stated in his declaration that he filed in the district court that he has difficulty reading Spanish, that he did not understand the stipulated proceeding, and that he received the same sort of *en masse* reading of the stipulation as Ramos. Gomez also stated that the immigration officer did not review the Stipulated Removal form with him during his individual meeting with the officer. The government has presented no evidence—other than the signed form—that Gomez was provided with a competent translation when he signed it. As we held in *Ramos*, due process requires that an alien be provided an individual explanation that is competently translated "when he sign[s] the form" above and beyond an *en masse* explanation. 623 F.3d at 680.

Moreover, shifting the burden to Gomez to prove an incompetent translation would skew the government's incentives and create an insurmountable hurdle for alien defendants.    In *Ramos*, the government produced the immigration officer at a hearing only to have the court find that her translation had been inadequate.   As here, the government may not always be able to produce the immigration officer; or she may be otherwise unavailable. Thus, it is not realistic to expect the defendant to produce the officer.  Furthermore, if the government can stand silent and merely rely on the signed stipulation as sufficiently "clear and convincing" evidence, then it would have no incentive to produce an immigration officer witness.

In sum, we hold that the stipulated removal proceeding at Eloy violated Gomez's right to due process by obtaining an invalid waiver of Gomez's right to appeal the deportation order.  The government has not met its burden of proving by "clear and convincing evidence" that Gomez validly waived his right to that appeal.[5]

---

[5]  The government's argument—that the stipulated removal process set forth in 8 C.F.R. § 1003.25(b) is constitutional—misses the point.  Gomez does not contend that the regulation is unconstitutional, but rather that immigration authorities frequently abuse the regulatory procedure in violation of due process, and did so here.  It is not uncommon that the Constitution requires more than what is included in the bare text of any given statute or regulation.  To hold, as *Ramos* did, that the government must meet its burden of proving a valid waiver does not invalidate the procedures set forth in § 1003.25(b).

### b. Regulatory violation

Gomez also argues that his deportation was invalid because the IJ violated 8 C.F.R. § 1003.25(b) by finding that Gomez's waiver of rights was "voluntary, knowing, and intelligent" without a sufficient factual record.[6]  Again, our

---

[6]  8 C.F.R. § 1003.25(b) provides in full:

> An Immigration Judge may enter an order of deportation, exclusion or removal stipulated to by the alien (or the alien's representative) and the Service. The Immigration Judge may enter such an order without a hearing and in the absence of the parties based on a review of the charging document, the written stipulation, and supporting documents, if any. If the alien is unrepresented, the Immigration Judge must determine that the alien's waiver is voluntary, knowing, and intelligent.  The stipulated request and required waivers shall be signed on behalf of the government and by the alien and his or her attorney or representative, if any.  The attorney or representative shall file a Notice of Appearance in accordance with § 1003.16(b).  A stipulated order shall constitute a conclusive determination of the alien's deportability or removability from the United States.  The stipulation shall include:
>
> (1) An admission that all factual allegations contained in the charging document are true and correct as written;
>
> (2) A concession of deportability or inadmissibility as charged;
>
> (3) A statement that the alien makes no application for relief under the Act;

reasoning in *Ramos* is directly on point and does not rely on the concern of incompetent translation. Independent of the invalid waiver issue, we found that Ramos's Stipulated Removal form provided an inadequate basis on which the IJ could rely to evaluate the validity of Ramos's waiver of rights. "Without any independent inquiry of the petitioner, and depending solely on information provided by DHS, the IJ concluded that Ramos had 'voluntarily, knowingly, and intelligently' waived his due process rights." *Ramos*, 623 F.3d at 683. Despite the form's explicit waiver language, we concluded that the IJ's finding "violated 8 C.F.R. § 1003.25(b) by failing to determine whether [Ramos's] waiver was 'voluntary, knowing, and intelligent,' as required by the regulation." *Id.* We concluded that the regulatory violation would have been sufficient to invalidate Ramos's underlying removal but for a lack of prejudice. *See id.* at 683–84.

---

(4) A designation of a country for deportation or removal under section 241(b)(2)(A)(i) of the Act;

(5) A concession to the introduction of the written stipulation of the alien as an exhibit to the Record of Proceeding;

(6) A statement that the alien understands the consequences of the stipulated request and that the alien enters the request voluntarily, knowingly, and intelligently;

(7) A statement that the alien will accept a written order for his or her deportation, exclusion or removal as a final disposition of the proceedings; and

(8) A waiver of appeal of the written order of deportation or removal.

Here, on January 19, 2006, Gomez signed the revised Notice to Appear requesting a prompt hearing before an IJ. On the same day, he signed the Stipulated Removal form waiving, *inter alia*, the right to a hearing before an IJ. Without a hearing, and only on the basis of Gomez's signed Stipulated Removal form, the IJ found Gomez's "waiver to be voluntary, knowing, and intelligent." The IJ then found, "upon review of the charging document and the written stipulation that he is removable based upon clear and convincing evidence in the form of his own admissions" and ordered him removed.[7]

We do not read *Ramos* to require an actual appearance by every alien before an IJ, a possibility that the district court considered here. Rather, as the district court also discussed, 8 C.F.R. § 1003.25(b) can be read to contain two disjunctive provisions:

> [1] An Immigration Judge may enter an order of deportation, exclusion or removal stipulated to by the alien (or the alien's representative) and the Service. The Immigration Judge may enter such an order without a hearing and in the absence of the parties based on a review of the charging document, the written stipulation, and supporting documents, if any. [Or,]
>
> [2] [i]f the alien is unrepresented, the Immigration Judge must determine that the

---

[7] We are left to assume that the stipulation was signed subsequent to the demand for a prompt hearing (which appears on the NTA) and that the IJ inferred that the stipulation was controlling.

alien's waiver is voluntary, knowing, and intelligent.

8 C.F.R. § 1003.25(b). In other words, we could read the second provision to rebut the first: where an alien is unrepresented, the IJ's duty to determine the waiver's validity supercedes the IJ's ability to do so without a hearing. However, we need not decide that issue. Rather, as Gomez points out, there are several other avenues that immigration officials could pursue to create a sufficient factual record without conducting a hearing. For example, the government could provide a written declaration by the immigration officer of the circumstances surrounding the alien's waiver, stating that avenues of relief were discussed and that the officer provided a competently translated, individualized explanation of the rights the alien waived.[8]

Here, we conclude that the procedures followed in removing Gomez violated 8 C.F.R. § 1003.25(b) because the IJ could not have found that Gomez's waiver was "voluntary, knowing, and intelligent" based on the evidence before him, and thus violated 8 C.F.R. § 1003.25(b). *See Ramos*, 623 F.3d at 683.

Therefore, on the basis of both his invalid waiver of the right to appeal the deportation order and the IJ's regulatory violation, Gomez has met the requirements of 8 U.S.C. § 1326(d)(1)–(2) to attack collaterally the validity of his 2006

---

[8] We do not purport to set forth an exhaustive list of what would be necessary or sufficient to comply with this requirement in every case. The gravamen of our holding is that an IJ must have before him a sufficient record on which to determine that an alien's waiver of rights is "voluntary, knowing, and intelligent." 8 C.F.R. § 1003.25(b).

deportation. We next turn to whether Gomez was prejudiced by these violations.

## 2. Prejudice

As discussed *supra*, in a collateral attack on the validity of a deportation order the defendant bears the burden of proving prejudice under § 1326(d)(3). *See Medina*, 236 F.3d at 1032. To establish prejudice in this context, the defendant must show that it was "plausible" that he would have received some form of relief from removal had his rights not been violated in the removal proceedings. *See Arrieta*, 224 F.3d at 1079. "In order to demonstrate prejudice, [an alien] would also have to show that he is not barred from receiving relief. If he is barred from receiving relief, his claim is not 'plausible.'" *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1056 (9th Cir. 2003).

Gomez argues that he was prejudiced by the due process and regulatory violations during his removal proceeding because he was eligible for and would have pursued pre-hearing voluntary departure under 8 U.S.C. § 1229c. The government contends that Gomez was ineligible for voluntary departure because his previous Arizona conviction qualifies as an "aggravated felony" under 8 U.S.C. § 1101(a)(43).[9]

---

[9] Gomez also argues that his Arizona conviction is irrelevant because it was not included on the revised NTA that formed the basis for his deportation. This court has held, however, "that due process does not require inclusion of charges in the NTA that are not grounds for removal but are grounds for denial of relief from removal." *Salviejo-Fernandez v. Gonzales*, 455 F.3d 1063, 1066 (9th Cir. 2006). Therefore, even when the NTA fails to include a reference to an aggravated felony, that omission

Under § 1229c, an alien is generally eligible for voluntary departure so long as he has not been convicted of an "aggravated felony" rendering him deportable under 8 U.S.C. § 1227(a)(2)(A)(iii), and is not deportable for reasons of national security under 8 U.S.C. § 1227(a)(4). *Id.* § 1229c(b)(1)(C). The "aggravated felony" definition is set forth in 8 U.S.C. § 1101(a)(43) and includes "sexual abuse of a minor," *id.* § 1101(a)(43)(A), and "an attempt . . . to commit an offense described in this paragraph," *id.* § 1101(a)(43)(U).[10]

---

would not bar the government from introducing such a conviction later in an immigration proceeding as a basis for the IJ to find an alien ineligible for voluntary departure.

[10] We note that "based on a review of Arizona's caselaw, it is clear that Arizona's definition of attempt is coextensive with the federal definition." *United States v. Taylor*, 529 F.3d 1232, 1238 (9th Cir. 2008) (reviewing several Arizona cases that pre-date Gomez's conviction and deportation); *see also United States v. Gomez-Hernandez*, 680 F.3d 1171, 1175 (9th Cir. 2012). Here, Gomez was convicted of "attempted sexual conduct with a minor under the age of 15" in violation of Arizona Revised Statute sections 13-1001 and 13-1405. Because Arizona's attempt statute (§ 13-1001) is "coextensive with the federal definition," *Taylor*, 529 F.3d at 1238, "we are satisfied that [he] was convicted of the generic elements of attempt," *Gomez-Hernandez*, 680 F.3d at 1175. Therefore, we only address the definition of the substantive crime set forth in § 13-1405.

Aside from a narrow exception not presented here,[11] we look to the law at the time of the deportation proceedings to determine whether an alien was eligible for relief from deportation. *Vidal-Mendoza*, 705 F.3d at 1017–19; *Lopez-Velasquez*, 629 F.3d at 895, 897, 901. Gomez argues that *Vidal-Mendoza* and *Lopez-Velasquez* are inapplicable to our prejudice inquiry here. He asserts that those cases dealt only with our due process inquiry and that we must look to current case law when deciding prejudice. We read our case law more broadly. Gomez offers no persuasive authority or logic

---

[11] *United States v. Leon-Paz*, 340 F.3d 1003 (9th Cir. 2003) presents the only example of the "narrow circumstances [where] we [have] applied subsequent precedent in reviewing a deportation order." *United States v. Lopez-Velasquez*, 629 F.3d 894, 899 (9th Cir. 2010) (en banc); *see United States v. Vidal-Mendoza*, 705 F.3d 1012, 1017 (9th Cir. 2013).

> *Leon-Paz* [] involved an alien's collateral challenge to his removal order on the ground that the IJ failed to inform him of his "apparent eligibility" for discretionary relief under § 212(c). 340 F.3d at 1005. At the time of his removal hearing, Congress had changed the law to limit the availability of § 212(c) relief for aliens convicted of aggravated felonies, but we had not yet weighed in on whether these statutory changes were applicable retroactively to aliens like Leon-Paz. *See id.* at 1006–07. Shortly after Leon-Paz's removal hearing, the Supreme Court held that these changes applied prospectively only. *INS v. St. Cyr*, 533 U.S. 289, 326 (2001).

*Vidal-Mendoza*, 705 F.3d at 1017–18. This situation is not presented here. Rather, as in *Vidal-Mendoza* and *Lopez-Velasquez*, "the post-removal precedent . . . created a new, previously unavailable, possibility of relief by making a 'deviation' from 'longstanding Ninth Circuit and BIA precedent.'" *Vidal-Mendoza*, 705 F.3d at 1018 (quoting *Lopez-Velasquez*, 629 F.3d at 898). We evaluate this new precedent with respect to Gomez's sentencing arguments, *infra* at III.B.

on which to distinguish our reasoning in *Vidal-Mendoza* and *Lopez-Velasquez* when deciding prejudice.**[12]**

Therefore, we must decide whether Gomez's conviction for "attempted sexual conduct with a minor under the age of 15" in violation of Arizona Revised Statute section 13-1405 qualified as an "aggravated felony," 8 U.S.C. § 1101(a)(43), at the time he was ordered deported in January 2006.**[13]** We

---

**[12]** *United States v. Camacho-Lopez*, 450 F.3d 928 (9th Cir. 2006), is inapposite. It concerned whether a Supreme Court case decided after Camacho-Lopez's deportation proceedings was nonetheless applicable on collateral review to determine whether he was subject to removal as charged—not, as in this case, whether, although removable, he was entitled to discretionary relief. Moreover, the government in *Camacho-Lopez* conceded that the new precedent should be retroactively applied to answer the removability question. *Id.* at 930. Where, as here, the case concerns relief from removal, not removability, and the government does not so concede, we look to the law as it existed at the time of the deportation proceedings to determine whether an alien was prejudiced by the IJ's due process violations. *Vidal-Mendoza*, 705 F.3d at 1017–19; *Lopez-Velasquez*, 629 F.3d at 900–01.

**[13]** Gomez's statute of conviction provides: "A person commits sexual conduct with a minor by [1] intentionally or knowingly [2] engaging in sexual intercourse or oral sexual contact with [3] any person who is under eighteen years of age." Ariz. Rev. Stat. § 13-1405A. "Sexual conduct with a minor who is under fifteen years of age is a class 2 felony . . . ." *Id*. § 13-1405B. Subsection B also criminalizes sexual conduct with minors who are "at least fifteen years of age" if certain additional factors not at issue here are present. *See id.* Gomez argues that we should only look to the statutory language in subsection A. We disagree. Gomez was indicted for and convicted of violating Arizona Revised Statutes section 13-1405B. Therefore, our analysis is limited to that provision. Section 13-1405B defines the victim as being either "at least fifteen" or "under fifteen." Consequently, it is divisible with respect to the age of the victim, and, under the governing law in 2006, we may consider the indictment and plea agreement's clear language showing that Gomez was charged with sexual

conclude that Gomez's conviction would have qualified as "sexual abuse of a minor," defined as an aggravated felony under § 1101(a)(43)(A).

> We first defined the term 'sexual abuse of a minor' for purposes of § 1101(a)(43)(A) in *United States v. Baron-Medina*, 187 F.3d 1144[, 1146–47] (9th Cir. 1999), where we applied the 'ordinary, contemporary, and common meaning' of 'sexual abuse of a minor,' and concluded that any 'use of young children for the gratification of sexual desires constitutes an abuse' because the 'child [is] too young to understand the nature of [defendant's] . . . advances.'

*Vidal-Mendoza*, 705 F.3d at 1019 (second and third alterations in original).[14] The statute at issue in *Baron-Medina* criminalized "the touching of an underage child's

---

conduct with "a minor under the age of fifteen." *See Shepard v. United States*, 544 U.S. 13, 16, 26 (2005) (holding that a court determining the character of an underlying crime using the modified categorical approach may consider, *inter alia*, the "charging document" and "written plea agreement"); *see also Descamps*, 133 S. Ct. at 2283–85 (describing that *Taylor v. United States*, 495 U.S. 575, 602 (1990) permitted courts to review a limited group of documents when the statute of conviction is "'divisible'—*i.e.*, comprises multiple, alternative versions of the crime"). Gomez's indictment and judgment allege that he was convicted of the "under fifteen" version of § 13-1405B.

[14] We also "pointed out that Congress did not cross-reference any federal substantive offense in listing 'sexual abuse of a minor' as an aggravated felony," and therefore did not limit the term to a single federal definition. *Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1065 (9th Cir. 2003).

body . . . with a sexual intent," where the child was under fourteen years of age.   187 F.3d at 1145, 1147; *accord Cedano-Viera*, 324 F.3d at 1065–66 & n.4.  We later held that a conviction under a Virginia statute criminalizing intercourse with "a child . . . under fifteen years of age" constituted "sexual abuse of a minor" in the sentencing context where the defendant was twenty-six years old and the victim was thirteen years old.  *United States v. Pereira-Salmeron*, 337 F.3d 1148, 1155 (9th Cir. 2003) (alteration in original).**[15]**

The Board of Immigration Appeals ("BIA") precedent also guides our conclusion.  In *In re Rodriguez-Rodriguez*, 22 I. & N. Dec. 991 (B.I.A. 1999), the BIA broadly defined "sexual abuse of a minor" to exceed the definitions set forth in various federal criminal statutes, so as to include abuse that did not involve actual contact.  *Id*. at 995–96.  In so holding, the BIA looked to 18 U.S.C. § 3509(a) (1994) (setting forth the rights of child victims and witnesses), which "defines 'sexual abuse' as 'the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children.'"

---

**[15]** We note that the analysis for defining substantive offenses enumerated in § 1101(a)(43)—such as "rape" or "sexual abuse of a minor"—"is the same for a 'crime of violence' in the sentencing context, U.S.S.G. § 2L1.2." *United States v. Valencia-Barragan*, 608 F.3d 1103, 1107 n.1 (9th Cir. 2010) (citing *Pelayo-Garcia v. Holder*, 589 F.3d 1010, 1013 n.1 (9th Cir. 2009), and *United States v. Medina-Villa*, 567 F.3d 507, 511–12 (9th Cir. 2009)); *see also United States v. Medina-Maella*, 351 F.3d 944, 947 (9th Cir. 2003) (relying in the context of criminal sentencing upon cases defining "sexual abuse of a minor" in 8 U.S.C. § 1101(a)(43)(A)). Therefore, the analysis in sentencing cases such as *Pereira-Salmeron* is directly applicable to our analysis here.

*Id*. at 995 (quoting 18 U.S.C. § 3509(a)(8)). The BIA did not set forth a threshold age at which such conduct would constitute "abuse," although § 3509(a)(2) defines "child" as "a person who is under the age of 18."

Most tellingly, in April 2006—just three months after Gomez's deportation—we relied on *In re Rodriguez-Rodriguez* to affirm the BIA's holding that sexual intercourse with a 17-year-old constituted "sexual abuse of a minor" as defined by § 1101(a)(43)(A). *Afridi v. Gonzales*, 442 F.3d 1212, 1214–17 (9th Cir. 2006), *overruled by Estrada-Espinoza v. Mukasey*, 546 F.3d 1147 (9th Cir. 2008) (en banc), *overruled on other grounds by United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011) (en banc) (per curiam), *abrogated by Descamps*, 133 S. Ct. 2276.[16] Unlike *Estrada-Espinoza*, 546 F.3d at 1152, *Afridi*—like all of our cases preceding Gomez's 2006 deportation—did not explicitly rely on the fact that the subject statute required the defendant to be a certain number of years older than the victim. 442 F.3d at 1217. Applying the categorical approach, we held that the California statute of conviction that criminalizes conduct by "'[a]ny person who engages in an act of unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator,'" was categorically "sexual abuse of a minor." *Id*. (quoting Cal. Penal Code § 261.5(c)). We stated:

---

[16] We have said that *Estrada-Espinoza*, which was not decided until 2008, "sharply departed from" our prior precedent defining "sexual abuse of a minor" for purposes of § 1101(a)(43)(A). *Vidal-Mendoza*, 705 F.3d at 1020. We evaluate our current law, including *Estrada-Espinoza*, *infra* at III.B.

> A conviction under this statute meets the BIA's interpretation of "sexual abuse of a minor" as encompassing any offense that involves "the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in . . . sexually explicit conduct . . . ." *In re Rodriguez-Rodriguez*, 22 I. & N. Dec. at 991, 995. Mr. Afridi had sexual intercourse with a seventeen-year-old girl who was more than three years younger than he. Sexual intercourse clearly constitutes "sexually explicit conduct," and the seventeen-year-old victim in this matter was a "minor" as that term is commonly defined. Further, the BIA's definition of "sexual abuse of a minor" is not limited to victims of any certain age. Therefore, his offense falls within that definition. Accordingly, the BIA properly found that Petitioner was removable for having committed an aggravated felony . . . .

*Id.* (first and second alterations in original).

Construing the two statutory provisions together, *see supra* note 13, Gomez's statute of conviction contains three elements: (1) a mens rea of "intentionally or knowingly"; (2) an act of "engaging in sexual intercourse or oral sexual contact"; and (3) a victim "who is under fifteen years of age." Ariz. Rev. Stat. § 13-1405. Although the case law that existed in 2006 did not explicitly enumerate the elements of "sexual abuse of a minor," these three elements were sufficient to fall categorically within the then-existing BIA and Ninth Circuit definition. The "sexual intercourse or oral

sexual contact" element of § 13-1405 clearly constitutes "sexually explicit conduct." *See In re Rodriguez-Rodriguez*, 22 I. & N. Dec. at 995. And a victim under fifteen years of age fits squarely within the definition of "minor." *Id*. at 995–97; *Afridi*, 442 F.3d at 1217. Under the logic of *In re Rodriguez-Rodriguez*, 22 I. & N. Dec. at 995–96, and *Pereira-Salmeron*, 337 F.3d at 1155, such conduct with a victim under fifteen years of age constituted "abuse" at the time.

Thus, under the governing case law at the time of his deportation, Gomez's crime would have categorically qualified as "sexual abuse of a minor" for the purposes of 8 U.S.C. § 1101(a)(43)(A), and he would not have been eligible for voluntary departure. Because Gomez was not prejudiced by the due process and regulatory violations that occurred in his 2006 removal proceeding, we affirm the district court's denial of his motion to dismiss.

## B. Sentencing

We next determine whether, under current law, Gomez's § 13-1405 conviction constitutes a "crime of violence" within the meaning of U.S.S.G. § 2L1.2(b)(1)(A)(ii). Because our case law has evolved since 2006, we reach the opposite conclusion from what we concluded in analyzing the prejudice inquiry. That is, we hold that Arizona Revised Statute section 13-1405 (including the "under fifteen" version) is not categorically a "crime of violence" because it is missing an element of the generic offenses of sexual abuse of a minor and statutory rape, and the district court's finding to the contrary was reversible error. Thus, we vacate Gomez's sentence and remand for resentencing.

The United States Sentencing Guidelines provide for a sixteen-level enhancement where the defendant was previously deported after a conviction for "a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). The commentary defines "crime of violence" as "any of the following offenses under federal, state, or local law: . . . statutory rape, [or] sexual abuse of a minor." *Id*. cmt. 1(B)(iii).[17] Attempt convictions for offenses counted under U.S.S.G. § 2L1.2(b)(1) also qualify as crimes of violence. *Id*. cmt. 5. The district court imposed a sixteen-level sentencing enhancement because it found that Gomez's conviction was categorically a conviction for "statutory rape."

We begin by analyzing Gomez's conviction under the familiar categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990). Under this approach, we look only to the elements of Gomez's statute of conviction, and not the particular facts underlying his conviction. 495 U.S. at 600.[18] As we explained above, Gomez's conviction under Arizona Revised Statutes section 13-1405B contains three elements: (1) a mens rea of "intentionally or knowingly"; (2) an act of "engaging in sexual intercourse or oral sexual

---

[17]   The government argues only that Gomez's Arizona conviction qualifies as either "statutory rape" or as "sexual abuse of a minor."

[18]   As we discussed *supra* at note 13, however, we may consider that Gomez was convicted pursuant to the "under fifteen" version of the statute. *See Descamps*, 133 S. Ct. at 2283–85 (reiterating that courts may consider a limited group of documents when the statute of conviction is "'divisible'—*i.e.*, comprises multiple, alternative versions of the crime"). Although we ultimately conclude that § 13-1405 is missing elements of the relevant generic offenses, the provisions set forth in § 13-1405B are indeed "divisible" as to the age of the victim because the statute defines the victim as being either "at least fifteen" or "under fifteen."

contact"; and (3) a victim "who is under fifteen years of age." Ariz. Rev. Stat. § 13-1405. Then, we look to the generic definitions of "sexual abuse of a minor" and of "statutory rape" to determine if the elements of § 13-1405B are the same as, or more narrow than, the generic offenses. *See Descamps*, 133 S. Ct. at 2283. "[I]f the [state] statute sweeps more broadly than the generic crime, a conviction under that law cannot count" for the purposes of a sentencing enhancement. *Id.* For the reasons set forth below, we conclude that Gomez's conviction under § 13-1405B is not categorically a conviction for sexual abuse of a minor or statutory rape because it is missing an element of each generic offense.

### 1. Generic Sexual Abuse of a Minor

We turn first to the generic definition of "sexual abuse of a minor." Three related lines of cases compel us to conclude that the statute, even including the "under fifteen" version, is missing an element of "sexual abuse of a minor." First, in a unanimous en banc opinion considering whether a conviction constitutes the aggravated felony "sexual abuse of a minor" as set forth in 8 U.S.C. § 1101(a)(43)(A), we defined the generic offense of "sexual abuse of a minor" as requiring "four elements: (1) a mens rea level of knowingly; (2) a sexual act; (3) with a minor between the ages of 12 and 16; and (4) an age difference of at least four years between the defendant and the minor." *Estrada-Espinoza*, 546 F.3d at 1152, 1156; *see also* 18 U.S.C. § 2243.[19]  We have

---

[19]  Although dicta in *Estrada-Espinoza* states that offenses bearing the title "'sexual abuse of a minor' . . . . define what would, in more common parlance, be referred to as statutory rape," 546 F.3d at 1156, we have

recognized that the definition of "sexual abuse of a minor" set forth in *Estrada-Espinoza* applies equally to U.S.S.G. § 2L1.2. *See Valencia-Barragan*, 608 F.3d at 1105, 1107 (applying *Estrada-Espinoza*'s definition of "sexual abuse of a minor" in the sentencing context); *Medina-Villa*, 567 F.3d at 511 (reaffirming that the "decisional law defining the term 'sexual abuse of a minor' in the sentencing context, U.S.S.G. § 2L1.2, is informed by the definition of the same term in the immigration context, 8 U.S.C. § 1101(a)(43)(A), and vice versa" (footnote omitted)); *supra* note 15.

Second, in *Medina-Villa*, we held that *Estrada-Espinoza* did not set forth the exclusive definition of "sexual abuse of a minor." 567 F.3d at 516. We noted that *Estrada-Espinoza*'s definition of "sexual abuse of a minor" "encompassed statutory rape crimes only," and recognized that a residual category of "sexual abuse of a minor" exists that encompasses statutes where (1) "the conduct proscribed . . . is sexual;" (2) "the statute protects a minor;" and (3) "the statute requires abuse." *Id.* at 513–14. In turn, we defined the term "abuse" as "physical or psychological harm in light of the age of the victim in question." *Id.* (internal quotation marks omitted). We have noted that sexual contact with a victim under the age of fourteen is categorically "abuse," *see United States v. Lopez-Solis*, 447 F.3d 1201, 1209 (9th Cir. 2006), but we have never held that such a *per se* rule applies to consensual sex with persons fourteen and older, *see Valencia-Barragan*, 608 F.3d at 1107 & n.2 (recognizing the two distinct generic definitions of "sexual abuse of a minor" and holding that a statute contains the element of abuse under the *Medina-Villa* definition if it "applies to sexual conduct

never held that *Estrada-Espinoza* sets forth the elements of generic statutory rape.

with children younger than fourteen years"); *Pelayo-Garcia*, 589 F.3d at 1015–16 (rejecting argument that a statute that criminalizes sex between someone over twenty-one with a minor under sixteen is per se "abusive").

Third, in addressing the "under eighteen" version of the statute, we have expressly determined that convictions under Arizona Revised Statutes section 13-1405 meet neither the generic definition of "sexual abuse of a minor" set forth in *Estrada-Espinoza* nor the generic definition of "abuse of a minor" set forth in *Medina-Villa*. *Rivera-Cuartas v. Holder*, 605 F.3d 699, 701–02 (9th Cir. 2010). A conviction under this statute does not meet the definition set forth in *Estrada-Espinoza* "for two reasons: (1) it lacks the age difference requirement; and (2) is broader than the generic offense with respect to the age of the minor because the statute applies to persons under eighteen years of age." *Id*. at 702. Here, analyzing the "under fifteen" version of § 13-1405, the statute continues to lack the age difference element. "Section 13-1405 also does not meet the generic definition of 'sexual abuse of a minor' under the *Medina-Villa* framework as it lacks the element of 'abuse.'" *Id*. Again, analyzing the "under fifteen" version, the statute continues to lack the element of "abuse" because the statute may apply to victims who are not "younger than fourteen years." *Valencia-Barragan*, 608 F.3d at 1107; *see also Pelayo-Garcia*, 589 F.3d at 1015–16.

## 2. Generic Statutory Rape

Arizona Revised Statutes section 13-1405 is also missing an element of the generic offense of statutory rape. Whether the generic offense of statutory rape has, as an element, a four-year age difference, is an issue of first impression. The

development of our law in this area, as well as the statutory law of other jurisdictions, leads us to conclude that a four-year age difference is an element of the generic offense of statutory rape. Because § 13-1405, even the "under fifteen" version of the statute, is missing this element, a conviction under the statute is not categorically a crime of violence.

We first addressed the generic offense of statutory rape in *United States v. Gomez-Mendez*, 486 F.3d 599 (9th Cir. 2007). There, we held that "[t]he term 'statutory rape' is ordinarily, contemporarily, and commonly understood to mean the unlawful sexual intercourse with a minor under the age of consent specified by state statute." *Id.* at 603. In *Gomez-Mendez*, we did not address what other elements, if any, comprised the generic offense of statutory rape.

Shortly after *Gomez-Mendez*, we revisited the definition of the generic offense of statutory rape. *See United States v. Rodriguez-Guzman*, 506 F.3d 738, 744–46 (9th Cir. 2007). In *Rodriguez-Guzman*, we reached one of the issues left open by *Gomez-Mendez*: "the ordinary, contemporary, and common meaning of the term 'minor' in the context of a statutory rape law." *Id.* at 745. Finding that at least thirty states set the age of consent at sixteen and the Model Penal Code and the federal statutory rape provision had as an element a victim under the age of sixteen, we held that the ordinary, contemporary, and common meaning of the term "minor" in the context of statutory rape law was a person under sixteen years of age. *Id.* Again, we did not consider whether the generic offense of statutory rape included any other elements.

In *United States v. Gonzalez-Aparicio*, 663 F.3d 419 (9th Cir. 2011), we were faced with the same question presented

here: whether a conviction under Arizona Revised Statutes section 13-1405 was categorically a crime of violence for the purposes of sentencing. *Id.* at 425–26. The district court held that it was, but did not specify whether the conviction was categorically a conviction for the generic offense of "statutory rape" or "sexual abuse of a minor." *Id.* at 423–24, 425. Gonzalez-Aparicio did not object below, but on appeal, he argued that the generic offense of statutory rape has, as one of the elements, a four-year age difference. *Id.* at 425–26. We recognized that *Estrada-Espinoza*'s definition of "sexual abuse of a minor" might bear on the definition of generic statutory rape. *See id.* at 429–30. Ultimately, however, we declined to decide "whether—and how[—] *Estrada-Espinoza* should be applied in defining the generic crime of 'statutory rape' under U.S.S.G. § 2L1.2(b)(1)(A)(ii)." *Id.* at 431. Acknowledging that "whether the generic federal definition of 'statutory rape' includes a [four]–year age difference element" is a "difficult issue," we also declined to resolve that question. *Id.* Instead, we held that any error that may have been committed by the district court in imposing the sixteen-level crime of violence sentencing enhancement was not plain error. *Id.* at 432.

Finally, in *United States v. Zamorano-Ponce*, 699 F.3d 1117, 1118 (9th Cir. 2012), we again addressed the elements of the generic offense of statutory rape. Zamorano-Ponce argued that his conviction was not categorically a conviction for the generic offense of statutory rape because the statute of conviction did not include a mens rea element of "knowingly," relying on *Estrada-Espinoza*. *Zamorano-Ponce*, 699 F.3d at 1120. We rejected this argument, explaining:

>Defendant's reliance on *Estrada-Espinoza* is misplaced. That case defined the term "sexual abuse of a minor" for the purpose of considering whether a prior conviction constituted an "aggravated felony" under the Immigration and Nationality Act. Nothing in *Estrada-Espinoza* purports to require that "statutory rape," within the meaning of the commentary to the Guidelines, contain a mens rea element. Nor does the case overrule or undermine *Gomez-Mendez* or *Rodriguez-Guzman* in any other way. In fact, we have recognized previously that *Estrada-Espinoza* never discussed or even cited to our prior "statutory rape" decisions in *Gomez-Mendez* and *Rodriguez-Guzman*.

*Id.* (internal quotation marks and citations omitted). Having rejected the argument that *Estrada-Espinoza* sets forth the elements of the generic offense of statutory rape, we held, based on *Gomez-Mendez* and *Rodriguez-Guzman*, that generic statutory rape does not have, as an element, a mens rea of "knowingly." *Id.* at 1119–20. Although we held that *Estrada-Espinoza* does not set forth the elements of generic statutory rape, we nonetheless recognized that whether a four-year age difference is an element of generic statutory rape remains an open question. *Id.* at 1119.

We now answer that question in the affirmative. In reaching this conclusion, we follow the approach we took in *Rodriguez-Guzman*, looking to the Model Penal Code, federal law, and state statutory rape laws to determine whether statutory rape, in the generic sense, includes a four-year age difference. *See* 506 F.3d at 745; *see also Estrada-Espinoza*,

546 F.3d at 1152 ("In the absence of specific congressional guidance as to the elements of a crime, courts have been left to determine the generic sense in which the term is now used in the criminal codes of most States." (internal quotation marks and citation omitted)).

The Model Penal Code's statutory rape provision, entitled "Corruption of Minors and Seduction," requires a four-year age difference between the victim and the perpetrator. Model Penal Code § 213.3(1)(a). It provides that:

> A male who has sexual intercourse with a female not his wife, or any person who engages in deviate sexual intercourse or causes another to engage in deviate sexual intercourse is guilty of an offense if:

> (a) the other person is less than [16] years old and the actor is at least [four] years older than the other person . . . .

*Id.*; *see also Rodriguez-Guzman*, 506 F.3d at 745. Likewise, the federal statute that most closely matches generic statutory rape, 18 U.S.C. § 2243(a), *see Rodriguez-Guzman*, 506 F.3d at 745, also includes a four-year age difference.[20]

---

[20] Notably, 18 U.S.C. § 2243(a) is the statute we relied upon in *Estrada-Espinoza* for the elements of the generic offense of "sexual abuse of a minor." In *Rodriguez-Guzman*, however, we characterized this statute as setting out the "[f]ederal defin[ition] [of] statutory rape." We continue to treat § 2243 as the federal statutory rape provision. Although a conviction under § 2243 would not categorically constitute a conviction for generic statutory rape because it does not have, as an element, sexual intercourse, there are no federal offenses specifically criminalizing sexual intercourse

Furthermore, a substantial number of state statutes now include at least a four-year age difference in their statutory rape laws.[21] Forty-one states have an age difference in at least some of their statutory rape laws.[22] Of those, thirty-two

---

with minors. Section 2243 is the closest federal analog to generic statutory rape.

[21] Most states have multiple provisions governing statutory rape. Typically, the extent—and existence—of the age gap depends on the age of the victim. This makes extrapolating a generic definition of statutory rape somewhat complicated. Nonetheless, after carefully surveying the state laws, we conclude a consensus can be gleaned that statutory rape ordinarily involves at least a four-year age gap.

[22] *See* Ala. Code § 13A-6-61(a)(3); Alaska Stat. Ann. § 11.41.436(a)(1); Ark. Code Ann. § 5-14-127(a)(1)(A); Cal. Penal Code § 261.5(d); Colo. Rev. Stat. Ann. § 18-3-402(a)(1)(d); Conn. Gen. Stat. Ann. § 53a-70(a)(2); Del. Code. Ann. tit. 11 § 773(a)(5); Fla. Stat. Ann. § 794.05(1); Haw. Rev. Stat. § 707-730(c); Idaho Code Ann. § 18-6101(1); 720 Ill. Comp. Stat. 5/11-1.40(a)(1); In. Code Ann. § 35-42-4-9(a); Iowa Code Ann. § 709.4(1)(b)(3)(d); Ky. Rev. Stat. Ann. § 510.050(1)(a); La. Rev. Stat. Ann. § 14:80A; Me. Rev. Stat. Ann. tit. 17-A § 254; Md. Code Ann., Crim. Law § 3-304(a)(3); Mass. Gen. Laws Ann. ch. 265, § 23A(a); Minn. Stat. § 609.342(1)(b); Miss. Code. Ann. § 97-3-95(1)(c); Mo. Ann. Stat. § 566.034; Mont. Code Ann. § 45-5-502(3); Neb. Rev. Stat. § 28-319.01(1); Nev. Rev. Stat. Ann. §§ 200.364, 200.368; N.H. Rev. Stat. Ann. § 632-A:3(II); N.J. Stat. Ann. § 2C:14-2(c)(4); N.M. Stat. Ann. § 30-9-11(G)(1); N.Y. Penal Law § 130.25(2); N.C. Gen. Stat. Ann. § 14-27.2; N.D. Cent. Code § 12.1-20-05(2); Ohio Rev. Code Ann. § 2907.04; Okla. Stat. Ann. tit. 21, § 1114(A)(1); 18 Pa. Cons. Stat. Ann. § 3122.1(a); R.I. Gen. Laws Ann. § 11-37-6; S.D. Codified Laws § 22-22-1(5); Tenn. Code Ann. § 39-13-506(b); Utah Code Ann. § 76-5-401.2; Vt. Stat. Ann. tit. 13, § 3253(a)(8); Wash. Rev. Code. Ann. § 9A.44.079; W. Va. Code Ann. § 61-8B-5(a)(2); Wyo. Stat. Ann. § 6-2-315(a)(i).

states require an age difference of four years or more.[23] *Rodriguez-Guzman* held that the common understanding of the term "minor" in the context of statutory rape laws is a person under the age of sixteen based on a comparable number of states—thirty—setting their age of consent at sixteen. 506 F.3d at 745. Moreover, of the states with an age-gap requirement, only twelve require a three-year age difference in any of their provisions[24] and only twelve require a two-year age difference in any of their provisions.[25] In

---

[23] *See* Ala. Code § 13A-6-61(a)(3); Alaska Stat. Ann. § 11.41.436(a)(1); Ark. Code Ann. § 5-14-127(a)(1)(A); Cal. Penal Code § 261.5(d); Colo. Rev. Stat. Ann. § 18-3-402(a)(1)(d); Del. Code. Ann. tit. 11 § 773(a)(5); Fla. Stat. Ann. § 794.05(1); Haw. Rev. Stat. § 707-730(c); 720 Ill. Comp. Stat. 5/11-1.40(a)(1); Iowa Code Ann. § 709.4(1)(b)(3)(d); Ky. Rev. Stat. Ann. § 510.050(1)(a); La. Rev. Stat. Ann. § 14:80A; Me. Rev. Stat. Ann. tit. 17-A § 254; Md. Code Ann., Crim. Law § 3-304(a)(3); Mass. Gen. Laws Ann. ch. 265, § 23A(a); Minn. Stat. § 609.342(1)(b); Mo. Ann. Stat. § 566.034; Neb. Rev. Stat. § 28-319.01(1); N.H. Rev. Stat. Ann. § 632-A:3(II); N.J. Stat. Ann. § 2C:14-2(c)(4); N.M. Stat. Ann. § 30-9-11(G)(1); N.Y. Penal Law § 130.25(2); N.C. Gen. Stat. Ann. § 14-27.2; N.D. Cent. Code § 12.1-20-05(2); Okla. Stat. Ann. tit. 21, § 1114(A)(1); 18 Pa. Cons. Stat. Ann. § 3122.1(a); Tenn. Code Ann. § 39-13-506(b)(1); Utah Code Ann. § 76-5-401.2; Vt. Stat. Ann. tit. 13, § 3253(a)(8); Wash. Rev. Code. Ann. § 9A.44.079; W. Va. Code Ann. § 61-8B-5(a)(2); Wyo. Stat. Ann. § 6-2-315(a)(i).

[24] *See* Alaska Stat. Ann. § 11.41.434(a)(1); Cal. Penal Code § 261.5(c); Conn. Gen. Stat. Ann. § 53a-71(a)(1); Idaho Code Ann. § 18-6101(2); Minn. Stat. § 609.342(1)(a); Miss. Code. Ann. § 97-3-95(1)(c); Mont. Code Ann. § 45-5-502(3); N.Y. Penal Law § 130.30(1); S.D. Codified Laws § 22-22-1(5); Vt. Stat. Ann. tit. 13, § 3252(c); Wash. Rev. Code. Ann. § 9A.44.076; Wyo. Stat. Ann. § 6-2-314(a)(i).

[25] *See* Ala. Code § 13A-6-62(a)(1); Conn. Gen. Stat. Ann. § 53a-70(a)(2); Idaho Code Ann. § 18-6101(1); In. Code Ann. § 35-42-4-9(a); La. Rev. Stat. Ann. § 14:80.1A; Minn. Stat. § 609.344(1)(b); Miss. Code. Ann. § 97-3-95(1)(d); Nev. Rev. Stat. Ann. §§ 200.364, 200.368;

contrast, twenty-two states require a four-year age gap in at least some of their statutory rape laws.[26]  Moreover, seventeen states require an even greater age difference— ranging from five years to twelve years—in at least some of their statutory rape provisions.[27]  Based on the foregoing, we conclude that there is significant consensus among the states that statutory rape is characterized by an age difference between the victim and the defendant, and a four-year age difference is the most common line that states have drawn.

We recognize that thirty-five states have at least one provision criminalizing sexual intercourse with minors that

Ohio Rev. Code Ann. § 2907.04; R.I. Gen. Laws Ann. § 11-37-6; Wash. Rev. Code. Ann. § 9A.44.073; W. Va. Code Ann. § 61-8B-3(a)(2).

[26] *See* Ala. Code § 13A-6-61(a)(3); Alaska Stat. Ann. § 11.41.436(a)(1); Ark. Code Ann. § 5-14-127(a)(1)(A); Colo. Rev. Stat. Ann. § 18-3-402(a)(1)(d); 720 Ill. Comp. Stat. 5/11-1.40(a)(1); Iowa Code Ann. § 709.4(1)(b)(3)(d); Ky. Rev. Stat. Ann. § 510.050(1)(a); La. Rev. Stat. Ann. § 14:80A; Md. Code Ann., Crim. Law § 3-304(a)(3); Minn. Stat. § 609.342(1)(b); Mo. Ann. Stat. § 566.034; N.H. Rev. Stat. Ann. § 632-A:3(II); N.J. Stat. Ann. § 2C:14-2(c)(4); N.M. Stat. Ann. § 30-9-11(G)(1); N.Y. Penal Law § 130.25(2); N.C. Gen. Stat. Ann. § 14-27.2; Okla. Stat. Ann. tit. 21, § 1114(A)(1); 18 Pa. Cons. Stat. Ann. § 3122.1(a); Tenn. Code Ann. § 39-13-506(b); Wash. Rev. Code. Ann. § 9A.44.079; W. Va. Code Ann. § 61-8B-5(a)(2); Wyo. Stat. Ann. § 6-2-315(a)(i).

[27] *See* Cal. Penal Code § 261.5(d); Colo. Rev. Stat. Ann. § 18-3-402(a)(1)(e); Del. Code. Ann. tit. 11 §§ 770(a)(2), 771(a)(1), 772(a)(2)(g), 773(a)(5); Fla. Stat. Ann. § 794.05(1); Haw. Rev. Stat. § 707-730(c); 720 Ill. Comp. Stat. 5/11-1.60(d); Ky. Rev. Stat. Ann. § 510.060(1)(b); Me. Rev. Stat. Ann. tit. 17-A § 254; Mass. Gen. Laws Ann. ch. 265, § 23A(a), (b); Neb. Rev. Stat. § 28-319.01(1); N.Y. Penal Law § 130.35(4); N.C. Gen. Stat. Ann. §§ 14-27.2A, 14-27.7A; N.D. Cent. Code § 12.1-20-05(2); 18 Pa. Cons. Stat. Ann. § 3122.1(b); Tenn. Code Ann. §§ 39-13-506(b)(2), 39-13-506(c); Utah Code Ann. § 76-5-401.2; Vt. Stat. Ann. tit. 13, § 3253(a)(8).

includes no age difference element whatsoever.**[28]**  However, in seventeen of these states, such statutes always have, as an element, a victim who is under the age of fourteen.**[29]** Moreover, in another seven of these states, at least some of the provisions that lack an age difference element require as

---

**[28]** *See* Ariz. Rev. Stat. Ann. § 13-1405; Ark. Code Ann. §§ 5-14-103(a)(3), 5-14-126(a)(2)(A); Cal. Penal Code § 261.5(b); Del. Code. Ann. tit. 11 § 770(a)(1); Fla. Stat. Ann. § 800.04(4)(a); Ga. Code Ann. § 16-6-3; Haw. Rev. Stat. § 707-730(b); 720 Ill. Comp. Stat. 5/11-1.30(b), 1.50(b); In. Code Ann. § 35-42-4-3(a); Iowa Code Ann. §§ 709.3(1)(b), 709.4(1)(b)(2); Kan. Stat. Ann. §§ 21-5503(a)(3), 21-5506(b), 21-5507(a); Ky. Rev. Stat. Ann. § 510.040(1)(b)(2); Me. Rev. Stat. Ann. tit. 17-A § 253; Mass. Gen. Laws Ann. ch. 265, § 23; Mich. Comp. Laws. Ann. §§ 750.520b(1)(a), 750.520d(1)(a); Minn. Stat. § 609.344(1)(a); Mo. Ann. Stat. § 566.032; Mont. Code Ann. §§ 45-5-501(1)(a)(ii)(D), 45-5-503(1); N.H. Rev. Stat. Ann. § 632-A:3(III); N.J. Stat. Ann. § 2C:14-2(a)(1); N.M. Stat. Ann. § 30-9-11(D)(1); N.Y. Penal Law § 130.35(3); N.D. Cent. Code §§ 12.1-20-03(1)(d), 12.1-20-05(1); Ohio Rev. Code Ann. § 2907.02; Okla. Stat. Ann. tit. 21, §§ 1111, 1114(B); Or. Rev. Stat. Ann. §§ 163.375(1)(b), 163.365(1), 163.375(1)(b); 18 Pa. Cons. Stat. Ann. § 3121(c); R.I. Gen. Laws Ann. § 11-37-8.1; S.C. Code Ann. § 16-3-655(A), (B); S.D. Codified Laws § 22-22-1(1); Tex. Penal Code Ann. § 22.011(a)(2), (c)(1); Utah Code Ann. §§ 76-5-401, 76-5-402.1; Vt. Stat. Ann. tit. 13, § 3252(c); Va. Code Ann. §§ 18.2-61, 18.2-63; Wis. Stat. Ann. §§ 948.02(1), 948.02(2), 948.09.

**[29]** *See* Ark. Code Ann. §§ 5-14-103(a)(3), 5-14-126(a)(2)(A); Haw. Rev. Stat. § 707-730(b); In. Code Ann. § 35-42-4-3(a); Iowa Code Ann. §§ 709.3(1)(b), 709.4(1)(b)(2); Ky. Rev. Stat. Ann. § 510.040(1)(b)(2); Me. Rev. Stat. Ann. tit. 17-A § 253; Minn. Stat. § 609.344(1)(a); Mo. Ann. Stat. § 566.032; N.H. Rev. Stat. Ann. § 632-A:3(III); N.J. Stat. Ann. § 2C:14-2(a)(1); N.M. Stat. Ann. § 30-9-11(D)(1); N.Y. Penal Law § 130.35(3); Ohio Rev. Code Ann. § 2907.02; 18 Pa. Cons. Stat. Ann. § 3121(c); R.I. Gen. Laws Ann. § 11-37-8.1; S.C. Code Ann. § 16-3-655(A), (B); S.D. Codified Laws § 22-22-1(1).

an element a victim under the age of fourteen.[30,31]  Because only eighteen states ever criminalize sexual intercourse with older minors irrespective of an age difference,[32] we are not persuaded that these state laws are probative of the elements of generic statutory rape, which involves sexual intercourse with minors under the age of sixteen, not just the very young. *Cf. Rodriguez-Guzman*, 506 F.3d at 745 (basing the generic definition of the term "minor" within the context of statutory rape on a consensus of thirty states).  When viewed as a whole, the state statutory rape laws, the Model Penal Code, and federal law support our conclusion that statutory rape is ordinarily, contemporarily, and commonly understood to

---

[30]  *See* 720 Ill. Comp. Stat. 5/11-1.30(b); Kan. Stat. Ann. § 21-5503(a)(3); Mich. Comp. Laws. Ann. § 750.520b(1)(a); Or. Rev. Stat. Ann. §§ 163.375(1)(b), 163.365(1); Utah Code Ann. § 76-5-402.1; Va. Code Ann. § 18.2-61; Wis. Stat. Ann. § 948.02(1).

[31]  Likewise, federal law and the Model Penal Code also include provisions criminalizing sexual intercourse with minors that lack an age-difference element.  *See* 18 U.S.C. § 2241(c); Model Penal Code § 213.1(1)(d).  These provisions also require as an element an especially young victim.  *See* 18 U.S.C. § 2241(c) (criminalizing sexual acts with children under the age of twelve); Model Penal Code § 213.1(1)(d) (including as an element a victim under the age of ten).

[32]  *See* Ariz. Rev. Stat. Ann. § 13-1405; Cal. Penal Code § 261.5(b); Del. Code. Ann. tit. 11 § 770(a)(1); Fla. Stat. Ann. § 800.04(4)(a); Ga. Code Ann. § 16-6-3; 720 Ill. Comp. Stat. 5/11-1.50(b); Kan. Stat. Ann. §§ 21-5506(b), 21-5507(a); Mass. Gen. Laws Ann. ch. 265, § 23; Mich. Comp. Laws. Ann. § 750.520d(1)(a); Mont. Code Ann. §§ 45-5-501(1)(a)(ii)(D), 45-5-503(1); N.D. Cent. Code §§ 12.1-20-03(1)(d), 12.1-20-05(1); Okla. Stat. Ann. tit. 21, §§ 1111, 1114(B); Or. Rev. Stat. Ann. § 163.375(1)(b); Tex. Penal Code Ann. § 22.011(a)(2), (c)(1); Utah Code Ann. § 76-5-401; Vt. Stat. Ann. tit. 13, § 3252(c); Va. Code Ann. § 18.2-63; Wis. Stat. Ann. §§ 948.02(2), 948.09.

include as an element a four-year age difference between the victim and the defendant.

To summarize, the elements of generic statutory rape are: (1) sexual intercourse (2) with a minor under the age of sixteen (3) who is at least four years younger than the defendant. Generic statutory rape does not have, as an element, a mens rea requirement of "knowingly." Arizona Revised Statutes section 13-1405 is missing the four-year age difference element of the generic offense of statutory rape.[33]

Therefore, Arizona Revised Statute section 13-1405, even the "under fifteen" version, is missing an element of generic "statutory rape" and generic "sexual abuse of a minor." Thus, a conviction under the statute is not categorically a conviction for a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii). Because the statute is missing an element of these generic crimes, our inquiry ends here—we do not undertake a modified categorical analysis. *Descamps*, 133 S. Ct. at 2283, 2292 (holding that the modified categorical approach does not apply to statutes that contain an "'indivisible' set of elements sweeping more broadly than the corresponding generic offense," meaning that "the statute of conviction has an

---

[33] Gomez's conviction under Arizona Revised Statutes section 13-1405 may also be missing another element of the generic offense of statutory rape. The statute criminalizes both "sexual intercourse" and "oral sexual contact," but our case law has held that the generic offense of statutory rape requires "sexual intercourse." *Gomez-Mendez*, 486 F.3d at 603. The statute is divisible as to the actus reus element, so we may employ the modified categorical approach to determine whether Gomez's conviction contains, as an element, "sexual intercourse." *See Descamps*, 133 S. Ct. at 2281. However, because Gomez did not raise the issue, we do not decide whether his conviction has this element of the generic offense of statutory rape.

overbroad or missing element"). "Because of the mismatch in elements, a person convicted under [such a] statute is never convicted of the generic crime." *Id*. at 2292.

### 3. Harmless Error

We also reject the government's argument that the sentencing error was harmless. In imposing the sentence, the district court stated:

> I would also note that if I'm wrong on the calculations . . . [and] the Court or court on appeal . . . find[s] that . . . the four-year age differential is essential[,] . . . I . . . doubt very much that there would be any significant change in the sentence that's about to be imposed.

The district court did not actually calculate the sentence it would have imposed absent the enhancement and imposed a sentence that was above the Guidelines range absent the enhancement. *See United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 n.5 (9th Cir. 2011) (noting that a Guidelines calculation error may be harmless if one of four non-exhaustive factors is satisfied, including if the district court "chooses a within-Guidelines sentence that falls within . . . the correct Guidelines range"); *see also United States v. Acosta-Chavez*, 727 F.3d 903, 909-10 (9th Cir. 2013).

### IV.  CONCLUSION

In sum, we  hold that the IJ violated an immigration regulation designed to protect an alien's right to judicial review and that Gomez was denied due process in his 2006

removal proceedings, but that these violations were harmless in light of his ineligibility for relief from removal. We therefore affirm the denial of his motion to dismiss the indictment. We further hold that Gomez's conviction under Arizona Revised Statute section 13-1405 did not constitute a "crime of violence" within the meaning of U.S.S.G. § 2L1.2(b)(1)(A)(ii), and therefore the district court erred in applying a sixteen-level sentencing enhancement. Thus, we vacate Gomez's sentence and remand for resentencing.

**AFFIRMED in part and VACATED in part, and REMANDED.**