**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CORNELIO DELA CRUZ SALES JR., AKA Cornelio Dela Cruz Sales, AKA Cornelio De La Cruz Sales, AKA Jon Dela Cruz Sales, *Petitioner*, | No. 15-70885 Agency No. A029-556-125 |
| v. | OPINION |
| JEFFERSON B. SESSIONS III, Attorney General, *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 19, 2017
San Francisco, California

Filed August 18, 2017

Before: Mary M. Schroeder and Mary H. Murguia, Circuit
Judges, and Jon P. McCalla,[*] District Judge.

Opinion by Judge Schroeder

---

[*] The Honorable Jon P. McCalla, United States District Judge for the
Western District of Tennessee, sitting by designation.

## SUMMARY[**]

### Immigration

The panel denied Cornelio Dela Cruz Sales' petition for review of the Board of Immigration Appeals' decision concluding that his California conviction for second degree murder, based on an aiding and abetting theory, made him removable for having been convicted of an aggravated felony.

The panel held that California law on aiding and abetting, which looks to the natural and probable consequences of an act the defendant intended, had not materially changed since the Supreme Court decided *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183 (2007). In *Duenas-Alvarez*, the Supreme Court held that absent a showing that the law had been applied in some "special" way, a California conviction for aiding and abetting a removable offense is also a removable offense. The panel concluded that there is nothing special about the California aiding and abetting law that brings it or Sales' conduct outside the generic definition of aiding and abetting. Accordingly, the panel held that the Board correctly ruled that Sales' conviction for second degree murder as an aider and abettor was an aggravated felony for purposes of his removal proceedings.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Harry J. Moren (argued), Alexander K. Talarides, and James N. Kramer, Orrick Herrington & Sutcliffe LLP, San Francisco, California, for Petitioner.

Jesse L. Busen (argued), Trial Attorney; Eric W. Marsteller and Claire L. Workman, Senior Litigation Counsel; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

SCHROEDER, Circuit Judge:

Cornelio Dela Cruz Sales, Jr., a native and citizen of the Philippines, petitions for review of the Board of Immigration Appeals's ("BIA") order of removal. Sales is a lawful permanent resident who was ordered removed under 8 U.S.C. §1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony. When he was eighteen, Sales was convicted in California of second degree murder on an aiding and abetting theory. On his release, after nineteen years of incarceration, he was placed in removal proceedings.

There is no dispute that a California conviction for second degree murder is an aggravated felony under federal law. The principal issue we must decide is whether, given the nature of the California law of natural and probable consequences, the conviction for aiding and abetting murder on a natural and probable consequences theory also qualifies as an aggravated felony. We agree with the BIA that it does.

The Supreme Court, in 2007, reviewed California's law on aiding and abetting, which like that of many jurisdictions looks to the natural and probable consequences of an act the defendant intended. *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 191–93 (2007). The Court concluded that absent a showing that the law has been applied in some "special" way, a conviction in California for aiding and abetting a removable offense is also a removable offense. *Id.* at 191. We now hold that California law, has not materially changed since *Duenas-Alvarez* was decided and was not applied in any "special" way in Sales' case. We therefore deny the petition.

## BACKGROUND

Sales was convicted in 1995 in California of second degree murder. We summarize what happened as reported in the unpublished Court of Appeal decision affirming the conviction. *See People v. Khounsiriwong, et al.* No. C023718 (Cal. Ct. App., Sept. 25, 1998) (unpublished).

The crime occurred on January 14, 1995, after an incident where Sales and a group of friends, including Vilay Khounsiriwong and Kloi Khounsirivong, drove to a house party where another friend was reported to be in trouble. There was testimony he needed "backup." Sales was armed with a pistol. When they arrived, Sales helped load the pistol. Vilay Khounsiriwong then took the pistol, got out of the car, and approached the house. Spotting another young man in a car parked at the curb, Khounsiriwong opened fire into the car, killing the victim.

Khounsiriwong, Khounsirivong and Sales were tried together. Vilay Khounsiriwong was convicted as a principal for first degree murder, while Sales and the car's driver, Kloi

Khounsirivong, were each convicted of second degree murder. The jury was instructed that Sales and Khounsirivong could each be convicted of second degree murder if he had intended to aid in commission of one or more of several target offenses (possession of a concealed weapon, possession of a loaded weapon, possession of a loaded weapon in a motor vehicle, brandishing a weapon, assault, and assault with a deadly weapon), and if the jury found that murder was a natural and probable consequence of the target offense. The California Court of Appeal affirmed Sales' conviction on direct appeal. Sales spent the next nineteen years in prison, and removal proceedings followed.

The Immigration Judge ordered Sales removed as having been convicted of an aggravated felony. Before the BIA, Sales argued that his conviction was not a match for generic murder, and thus could not qualify as an aggravated felony because, under California's application of the natural and probable consequences doctrine, he could have been convicted of murder without having the requisite mental state. The BIA rejected his argument, finding that this argument was foreclosed by *Duenas-Alvarez*, and noting the Supreme Court had "rejected the respondent's argument that there was anything 'special' about California's version of [the natural and probable consequences] doctrine." The BIA thus found his conviction was a match for aiding and abetting generic murder and therefore an aggravated felony. He timely petitioned this court for review.

## ANALYSIS

Our consideration of Sales' petition for review begins with *Duenas-Alvarez*, where the Supreme Court, reversing a Ninth Circuit decision, held that an individual convicted of

aiding and abetting a generic theft crime in California had committed an aggravated felony. *Duenas-Alvarez*, 549 U.S. at 187–89. This court had held that although the generic theft offense was an aggravated felony, aiding and abetting the generic theft offense was not. Duenas-Alvarez did not take that position before the Supreme Court. Instead he argued that he had not committed an aggravated felony because California's application of the natural and probable consequences doctrine for aiding and abetting offenses went beyond the generic application of natural and probable consequences. *Id.* at 190.

Duenas-Alvarez relied on three California Court of Appeal decisions for support, but the Supreme Court rejected his theory that any of those demonstrated there was anything special about California's application of the natural and probable consequences doctrine. *See id.* at 193. The Court, however, did recognize that a future party might be able to show that matching generic definitions might disguise a significant difference in the breadth of liability, provided there was

> a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

*Id.* at 193. Nonetheless, in the Court's view, Duenas-Alvarez had made "no such showing" and had at most shown a "theoretical possibility" that California law would allow a conviction for conduct outside the scope of generic aiding and abetting liability, whereas he needed to show a "realistic probability." *Id.* at 193.

Sales contends that he has made a showing sufficient to meet the requirements the Supreme Court set forth for a result different than the result in *Duenas-Alvarez*. He argues that California law on aiding and abetting is broader than that described in *Duenas-Alvarez*, so as to reach crimes removed from the defendant's actual conduct and thus beyond what the Supreme Court envisioned as "natural and probable consequences." Sales cites a recent decision by the California Court of Appeal that he argues demonstrates that California allows a defendant to be convicted of murder on a theory of natural and probable consequences when the defendant intended only to aid and/or abet a non-violent crime. *People v. Cruz-Santos*, 2015 WL 7282040 (Cal. Ct. App. Nov. 18, 2015) (unpublished). Sales also cites to the facts of his own case. His argument is unconvincing.

In *Cruz-Santos*, the list of target offenses included cultivation of marijuana, and the defendant was convicted of second degree murder. *Id.* at *1, *5. This was not as strange as it may sound, for the jury found the murder to have been a natural and probable consequence of a large marijuana growing operation patrolled by heavily armed guards. The opinion of the Court of Appeal affirming the conviction emphasized the presence of loaded weapons at the marijuana growing operation and threats of violence by their use in connection with guarding the enterprise. Further, both defendants were involved with threatening the victim and the

evidence was unclear as to which defendant fired the fatal shot.  It seems apparent that a jury could easily have found violent intent and applied the natural and probable consequences doctrine under these facts.  The California Supreme Court denied review, so there is no authoritative opinion of the state's highest court in the case.  Sales nevertheless reads the case to illustrate that California, distinct from other jurisdictions, will convict a defendant of murder as the natural and probable consequence of non-violent conduct.

Sales attempts to buttress his reading of *Cruz-Santos* by citing to Justice Liu's statement dissenting from the denial of the petition for review in the California Supreme Court. Justice Liu argued that *Cruz-Santos* allowed too great a gap in culpability between a target offense of cultivation of marijuana and the consequential conviction of murder.  *Id.* at *21 (Liu, J., dissenting).  The Chief Justice's concurrence in the denial of the petition for review, joined by two other justices, noted that "reasonable minds [could] differ about" Justice Liu's characterization of the *Cruz-Santos* record.  *Id.* at *18 (Cantil-Sakouye, C.J., concurring).

We therefore cannot read much into the opinion of the Justices in *Cruz-Santos* about the current state of the aiding and abetting law of California.  There is certainly nothing that would suggest that California applied the doctrine of natural and probable consequences at the time of Petitioner's conviction in any way that deviated from the way the United States Supreme Court described it in *Duenas-Alvarez*.

More helpful is a recent California Supreme Court discussion of aiding and abetting culpability that emphasized the vicarious nature of the liability the doctrine imposed. *See*

*People v. Chiu*, 325 P.3d 972 (Cal. 2014). The Court held that the natural and probable consequences doctrine cannot be used to impose aider and abetter liability for first degree murder because of the subjective element of premeditation, but the Court reaffirmed aider and abetter liability for second degree murder because "second degree murder is commensurate with a defendant's culpability for aiding and abetting a target crime that would naturally, probably and foreseeably result in a murder under the natural and probable consequences doctrine." *Chiu*, 325 P.3d at 980. The doctrine remains alive and well in California.

The facts of Sales' case are also not a convincing demonstration that California law is "special." The applicability of the natural and probable consequences doctrine was actually raised, at least indirectly, in the California courts in Sales' own case. Sales argued on appeal he could not have been found guilty of the serious crime of murder when the target offenses of weapons charges included what he regarded as trivial offenses. The state court dismissed this suggestion, pointing out that the jury was properly instructed on the factual issues of foreseeability, and that the "intentional shooting resulting in death stemming from aiding an armed confrontation is not unforeseeable as a matter of law." The court concluded that "[a]rming and transporting another for such a purpose is not trivial behavior; it is deadly serious." *See People v. Khounsiriwong, et al.*, No. C023718 (Sept. 25, 1998) (unpublished). In other words, the jury could have found murder to have been the natural and probable consequence of the target offenses.

In sum, in order to avoid the United States Supreme Court's characterization of California aiding and abetting law in *Duenas-Alvarez*, Sales attempts to show there is something

different or special about it. Sales makes the broad assertion that aiding and abetting liability in California has swept beyond the confines of *Duenas-Alvarez*, and has been used to convict defendants of murder where the target offense did not involve violent conduct or intent. This assertion is not borne out by the decision in *Cruz-Santos* or by Sales' own case. Sales here brought a gun in order to provide backup, and loaded the weapon, which was then used to murder the victim. The facts relating to the underlying conviction demonstrate the law was not applied in any way in Sales' case that differed from the law as described in *Duenas-Alvarez*. Sales therefore does not meet the criteria recognized in *Duenas-Alvarez* for a party who could show that matching generic definitions nonetheless disguised a difference in the breadth of liability.

Sales also argues that federal criminal law may have narrowed to demand direct proof of intent to aid or abet the crime of conviction. The Supreme Court's opinion in *Duenas-Alvarez* described proof of aiding and abetting through the doctrine of natural and probable consequences as the law of both state and federal jurisdictions. Sales directs us on appeal to the Supreme Court's more recent decision in *Rosemond v. United States*, 134 S. Ct. 1240 (2014). There the Court addressed the question of the specific intent required to be convicted of aiding and abetting the crime of using a gun in a drug transaction. Reversing the conviction, the Court held that the jury was instructed only that the defendant must have known of the transaction, but should also have been instructed that the defendant must have known about the gun. The Court said the jury must find that the "defendant has chosen, with full knowledge, to participate in the illegal scheme." *Id.* at 1250. The case does not help Sales, for it did not involve application of the natural and

probable consequences doctrine. Moreover, the Court expressly noted that it was not reaching the question of how the natural and probable consequences doctrine applied in accomplice liability. *See id.* at 1248 n.7.

Thus, *Rosemond* did not function to change our understanding of the generic definition of the natural and probable consequences doctrine under federal law from that laid down by the Supreme Court in *Duenas-Alvarez.* Even if *Rosemond* did somewhat narrow the generic definition of accomplice liability under federal law by requiring full knowledge of the underlying circumstances, Sales, unlike Rosemond, chose, with "full knowledge, to participate" in the target offense. *See id.* There is nothing special about California law that brings it or Sales conduct outside the generic definition of aiding and abetting.

Accordingly, the BIA correctly ruled that Sales' 1995 conviction of second degree murder as an aider and abettor was an aggravated felony for purposes of the removal proceedings.

The petition for review is **DENIED**.