**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee*,

v.

JOSE ALEJANDRO VALDIVIA-
FLORES, AKA Francisco Cruz-
Mendoza,
           *Defendant-Appellant.*

No. 15-50384

D.C. No.
3:14-cr-03700-BAS-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Cynthia A. Bashant, District Judge, Presiding

Argued and Submitted November 10, 2016
Pasadena, California

Filed December 7, 2017

Before: Diarmuid F. O'Scannlain and Johnnie B.
Rawlinson, Circuit Judges, and Rosemary Marquez,*
District Judge.

---

*The Honorable Rosemary Marquez, United States District Judge for the District of Arizona, sitting by designation.

Opinion by Judge O'Scannlain;
Special Concurrence by Judge O'Scannlain;
Dissent by Judge Rawlinson

_____

## SUMMARY[**]

_____

### Criminal Law

The panel reversed a criminal judgment, and remanded, in a case in which the defendant, who was convicted of attempted reentry of a removed alien, contended that his 2009 removal was invalid because his 1997 drug trafficking conviction under Wash. Rev. Code § 69.50.401 was incorrectly determined to be an aggravated felony.

The panel held that the defendant's waiver of the right to seek judicial review of the removal order was not considered and intelligent, where the Notice of Intent to Issue a Final Administrative Removal Order suggested the defendant could contest removability only on factual grounds, the defendant was not represented, and the defendant never had the benefit of appearing before an immigration judge despite his request for a hearing.

The panel held that the Washington drug trafficking statute is overbroad compared to its federal analogue because the former has a more inclusive mens rea requirement for accomplice liability. The panel held that under a straightforward application of the categorical

_____

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

approach, the defendant's conviction therefore cannot support an aggravated felony determination. Because under Washington law a jury need not agree on whether a defendant is a principal or accomplice, the panel held that the Washington drug trafficking statute is not divisible so far as the distinction between those roles is concerned. The panel held that the modified categorical approach therefore may not be applied, and it was error for the district court to do so.

The panel concluded that the defendant was, accordingly, prejudiced from his inability to seek judicial review for his 2009 removal, and that his collateral attack pursuant to 8 U.S.C. § 1326(d) on the underlying deportation order should have been successful.

Specially concurring, Judge O'Scannlain wrote separately to highlight how the result in this case illustrates the bizarre and arbitrary effects of the ever-spreading categorical approach for comparing state law offenses to federal criminal definitions.

Dissenting, Judge Rawlinson wrote that the majority has impermissibly veered away from the statute of conviction to find overbreadth based on its analysis of a statute that was not part of the prosecution or conviction in this case.

**COUNSEL**

Ellis M. Johnston III (argued), San Diego, California, for Defendant-Appellant.

Helen H. Hong (argued), Assistant United States Attorney; Lindsey A. Forrester Archer, Special Assistant United States Attorney; Peter Ko, Chief, Appellate Section, Criminal Division; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether a conviction for possession of a controlled substance with intent to distribute under Washington state law is an aggravated felony for purposes of federal immigration law.

I

Jose Valdivia-Flores is a Mexican citizen who entered the United States without inspection in 1995. In 1997, he was charged with and ultimately pled guilty to a violation of Washington's drug trafficking statute, Wash. Rev. Code § 69.50.401. In his Statement of Defendant on Plea of Guilty, Valdivia-Flores described the crime he was being charged with as: "possession with intent to deliver— Heroin." He also wrote out the elements of the crime: "Possess a controlled substance (heroin) with intent to distribute it in King County and know it was a narcotic drug." Finally, stating what made him guilty of Wash. Rev. Code § 69.50.401 in his own words, Valdivia-Flores wrote: "On June 20, 1997 in King County WA I did unlawfully

possess with intent to deliver Heroin a controlled substance and did know it was a controlled substance." Valdivia-Flores was sentenced to 21 months' imprisonment, which he served at an accelerated pace over seven months at a work ethic camp.

While he was in the camp, immigration officers prepared a Notice to Appear which charged Valdivia-Flores with being removable. In an order dated January 28, 1998, an immigration judge suspended the immigration proceedings because Valdivia-Flores was still serving his sentence at the camp and therefore could not be produced for a hearing. Nonetheless, at the conclusion of his sentence in April 1998, immigration officers physically removed Valdivia-Flores to Mexico without an order. Valdivia-Flores returned to the State of Washington that same year, again without inspection at the border.

In 2009, Valdivia-Flores was convicted of malicious mischief in the third degree in violation of Wash. Rev. Code § 9A.48.090 for smashing the windshield of his wife's vehicle after an argument. He pled guilty, and his sentence was suspended. At the time of that prosecution, the Department of Homeland Security initiated administrative removal proceedings pursuant to 8 U.S.C. § 1228(b). In March 2009, he received two copies of a form, one in English and one in Spanish, titled Notice of Rights and Request for Disposition. This notice informed Valdivia-Flores that he had "the right to a hearing before the Immigration Court to determine whether [he] may remain in the United States." Valdivia-Flores filled out and signed the Spanish version of the form, electing to request a hearing before the Immigration Court.

Also in March 2009, the Department of Homeland Security issued Valdivia-Flores a Notice of Intent to Issue a

Final Administrative Removal Order ("Notice of Intent"). It stated that Valdivia-Flores's 1997 conviction under Wash. Rev. Code § 69.50.401(a) was for an aggravated felony so that he was removable without a hearing before an immigration judge. The Notice of Intent informed Valdivia-Flores of his right to petition for review of his removal in the appropriate U.S. Circuit Court of Appeals. It also provided three check-boxes of options by which Valdivia-Flores could "contest [his] deportability": (1) he could assert that he was "a citizen or national of the United States"; (2) he could assert that he was "a lawful permanent resident"; and (3) he could claim that he was "not convicted of the criminal offense described" in the Notice of Intent. Valdivia-Flores did not contest his removal or request withholding of removal and instead checked a box acknowledging that he had "the right to remain in the United States for 14 calendar days in order to apply for judicial review" and that he "waive[d] this right." He did not petition for review of the removal decision and was removed on April 4, 2009. He remained in Mexico for a few days and then unlawfully reentered the United States for a third time.

On August 13, 2013, Valdivia-Flores was arrested in Washington for being an illegal alien found in the United States, in violation of 8 U.S.C. § 1326. He pled guilty and was convicted in the Western District of Washington in September 2013. Immigration authorities once again initiated removal proceedings. Valdivia-Flores requested asylum and sought a stay of removal "for humanitarian reasons," but those requests were denied, and Valdivia-Flores was removed in September 2014.

On November 13, 2014, Valdivia-Flores attempted to return (for a fourth time) to the United States, applying for entry through the pedestrian lanes at the San Ysidiro,

California port of entry. Valdivia-Flores falsely identified himself as another person and presented a false and fraudulent United States Certification of Naturalization. He was charged with one count of attempted reentry of a removed alien in violation of 8 U.S.C. § 1326 and one count of fraudulent use of an immigration document in violation of 18 U.S.C. § 1546.

Prior to trial, Valdivia-Flores brought a collateral attack against the validity of his 2009 order of removal and moved to dismiss the attempted reentry count of the indictment. The district court denied the motion to dismiss because Valdivia-Flores "did in fact admit in his plea agreement to committing a drug trafficking offense, which is an aggravated felony."

The parties then entered into a stipulation in which Valdivia-Flores agreed to facts satisfying all the elements of both counts in the indictment. Based on those stipulated facts, following a bench trial the district court found Valdivia-Flores guilty of both charges and sentenced him to 21 months' imprisonment on both counts, running concurrently.

Valdivia-Flores filed this timely appeal and seeks to challenge collaterally the classification of his underlying Washington state conviction as an aggravated felony.[1]

---

[1] "We review the district court's denial of a motion to dismiss an indictment brought pursuant to 8 U.S.C. § 1326(d) de novo." *United States v. Cisneros-Rodriguez*, 813 F.3d 748, 755 (9th Cir. 2015) (citation omitted). Whether a crime constituted an aggravated felony is a question of law reviewed de novo. *See Wang v. Rodriguez*, 830 F.3d 958, 960 (9th Cir. 2016).

II

Valdivia-Flores contends that because his 1997 conviction was incorrectly determined to be an aggravated felony, his 2009 removal was invalid.  If the 2009 removal was invalid, that "precludes reliance on th[at] deportation" in the subsequent illegal reentry prosecution.  *United States v. Ramos*, 623 F.3d 672, 679 (9th Cir. 2010).  Valdivia-Flores's collateral attack is governed by 8 U.S.C. § 1326(d), which allows such an attack to succeed if Valdivia-Flores can demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the removal proceedings improperly deprived him of the opportunity for judicial review; and (3) the removal order was fundamentally unfair.  8 U.S.C. § 1326(d).  The first two prongs of § 1326(d) are satisfied if his right to appeal was denied in violation of due process. *United States v. Gomez*, 757 F.3d 885, 893 (9th Cir. 2014).

Valdivia-Flores contends that his due process rights were indeed violated because "immigration officials failed to obtain a knowing waiver of" his right to appeal the removal order.  *Gomez*, 757 F.3d at 893.  "In order for [a] waiver to be valid . . . it must be both considered and intelligent." *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (internal quotation marks omitted).   The government contends that Valdivia-Flores did validly waive his right to appeal by signing the Notice of Intent, by failing to appeal, and by freely choosing instead to return to this country unlawfully.

Because Valdivia-Flores asserts that his waiver was not considered and intelligent, the government must show by clear and convincing evidence that the waiver was valid, *Ramos*, 623 F.3d at 681, and it may not simply rely on the signed document purportedly agreeing to the waiver, *Gomez*,

757 F.3d at 895.  Because we cannot rely on the contested waiver document itself, we evaluate the surrounding circumstances to determine whether the government can overcome the presumption against waiver.  *See Cisneros-Rodriguez*, 813 F.3d at 756.

Here, although the Notice of Intent described the window in which Valdivia-Flores could respond to the charges against him or file a petition for judicial review, it did not explicitly inform him that he could refute, through either an administrative or judicial procedure, the legal conclusion underlying his removability.  In fact, the Notice of Intent's three check boxes suggested just the opposite— that removability could only be contested on factual grounds.  The list of options available to "check off" did not include an option to contest the classification of the conviction as an aggravated felony, and the only check box relevant to the conviction itself only allowed Valdivia-Flores to contest that he "was not convicted of the criminal offense described."

The form's deficiencies are magnified because Valdivia-Flores "was not represented and never had the benefit of appearing before an [immigration judge], who, we presume, would have adequately conveyed both [his] appeal options and the finality associated with waiving appeal."  *Ramos*, 623 F.3d at 681 (internal quotation marks omitted).  Indeed, the Notice of Intent was issued without a hearing before an immigration judge despite Valdivia-Flores's request for a hearing.  The government provides no evidence that an immigration officer ever met with Valdivia-Flores to explain the form or the issues it raised; rather, the government merely relies on the sufficiency of the form's text to communicate Valdivia-Flores's options.

Under these circumstances, we conclude that Valdivia-Flores's waiver of the right to seek judicial review was not considered and intelligent. *Accord Gomez*, 757 F.3d at 896 (explaining that the fact that an alien signed a waiver was insufficient to meet the government's burden to establish a valid waiver when the record reflected deficiencies in the advisements given). Therefore, he was deprived of due process and satisfies the first two prongs of 8 U.S.C. § 1326(d).

## III

### A

With a due process violation established, the next step in Valdivia-Flores's argument is that the 2009 removal order "was fundamentally unfair," so he satisfies the final prong of 8 U.S.C. § 1326(d) to succeed in his collateral attack. He must "show that it was 'plausible' that he would have received some form of relief from removal had his rights not been violated in the removal proceedings." *Gomez*, 757 F.3d at 898 (quoting *Arrieta*, 224 F.3d at 1079). To meet that burden, Valdivia-Flores argues that, had he sought judicial review of the order, he would have prevailed in showing that he was not convicted of an aggravated felony as alleged in the Notice of Intent as the sole basis for his removal without a hearing before an immigration judge. The government disagrees and argues that Valdivia-Flores's drug trafficking conviction was properly classified as an aggravated felony. We must therefore determine whether Valdivia-Flores's 1997 conviction under Wash. Rev. Code § 69.50.401 was for an aggravated felony.

To determine whether an offense qualifies as an "aggravated felony," we apply the categorical approach articulated in *Taylor v. United States*, 495 U.S. 575 (1990).

*Rendon v. Holder*, 764 F.3d 1077, 1082 (9th Cir. 2014). Under the categorical approach, "we look not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony." *Roman-Suaste v. Holder*, 766 F.3d 1035, 1038 (9th Cir. 2014) (citation and internal quotation marks omitted).

To make his argument that the Washington drug-trafficking law is broader than its federal analogue, Valdivia-Flores observes that, under both the federal and state criminal laws, a person charged with a drug trafficking offense may be convicted either as a principal or for aiding and abetting. Critically, he says, Washington defines aiding and abetting more broadly than does federal law so that Washington forbids more conduct.

The implicit nature of aiding and abetting liability in every criminal charge is sufficiently well-settled that the government in this case does not contest it. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189 (2007) (In the United States, "every jurisdiction—all States and the Federal Government—has expressly abrogated the distinction among principals and aiders and abettors."). Instead, the government contends that Washington's definition of aiding and abetting liability is essentially the same as the federal definition so that they do, in fact, match categorically.

At the time of Valdivia-Flores's conviction, Washington's aiding and abetting statute stated: "A person is an accomplice . . . in the commission of a crime if . . . *[w]ith knowledge* that it will promote or facilitate the commission of the crime, he . . . solicits, commands, encourages, or requests such other person to commit it; or aids or agrees to aid such other person in planning or

committing it."  Wash. Rev. Code § 9A.08.020(3)(a)(i)–(ii) (1997) (emphasis added).  In contrast, under federal law, "to prove liability as an aider and abettor the government must establish beyond a reasonable doubt that the accused had the *specific intent* to facilitate the commission of a crime by someone else."  *United States v. Garcia*, 400 F.3d 816, 819 (9th Cir. 2005) (emphasis added).  Therefore, federal law requires a mens rea of specific intent for conviction for aiding and abetting, whereas Washington requires merely knowledge.

Consistent with the Model Penal Code on which it is based, Washington's criminal law expressly codifies the distinction between intent and knowledge and makes plain that knowledge is a less demanding mens rea requirement.  "A person acts with *intent or intentionally* when he acts with the objective or purpose to accomplish a result which constitutes a crime."  Wash. Rev. Code § 9A.08.010(1)(a) (1997) (emphasis added).  In contrast, "[a] person *knows or acts knowingly or with knowledge* when . . . (i) he is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or (ii) he has information which would lead a reasonable man in the same situation to believe that facts exist which facts are described by a statute defining an offense."  *Id.* § 9A.08.010(1)(b) (emphasis added).

The same distinction exists in federal law.  There, "a person who causes a particular result is said to act purposefully"—or with specific intent—"if he consciously desires that result . . . while he is said to act knowingly if he is aware that that result is practically certain to follow from his conduct, whatever his desire may be as to that result."  *United States v. Bailey*, 444 U.S. 394, 404 (1980) (internal quotation marks omitted); *see also Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 739 (9th Cir. 2008)

(distinguishing specific intent from "mere knowledge, or general intent").

Therefore, the Washington drug trafficking law on its face appears to have a more inclusive mens rea requirement for accomplice liability than its federal analogue. The Washington Supreme Court's case law indicates that the distinction between intent and knowledge is meaningful.[2] *See State v. Thomas*, 208 P.3d 1107, 1111 (Wash. 2009) ("To convict an accomplice of premeditated murder in the first degree, the State need not show that the accomplice had the intent that the victim would be killed. The prosecution need only prove that the defendant knew his actions would facilitate the crime . . . ."); *State v. Roberts*, 14 P.3d 713, 731–32 (Wash. 2000) ("The accomplice liability statute requires only a mens rea of knowledge . . . . [A]n accomplice, like a felony murder defendant, may be convicted with a lesser mens rea and a lesser actus reus than a principal to premeditated first degree murder."); *State v. Gocken*, 896 P.2d 1267, 1273–74 (Wash. 1995) ("Criminal conspiracy requires an element of intent, while accomplice liability requires a lesser culpable state of knowledge.").

B

The government's principal response to this statutory language and case law is to cite contrary Washington case law that suggests accomplice liability turns on a mens rea standard closer to intent than knowledge. *E.g.*, *In re Welfare of Wilson*, 588 P.2d 1161, 1164 (Wash. 1979) ("[I]t is the encouragement plus the intent of the bystander to encourage

---

[2] State statutes and the state court decisions interpreting them are both "authoritative sources of state law." *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016).

that constitutes abetting."); *State v. Truong*, 277 P.3d 74, 79–80 (Wash. Ct. App. 2012) ("[T]he State must prove that the defendant . . . shared in the criminal intent of the principal, thus demonstrating a community of unlawful purpose at the time the act was committed." (internal quotation marks omitted)). The Washington Supreme Court cases the government cites, however, significantly predate the above-quoted authoritative interpretations by that court, and in some cases they even predate the 1976 enactment of Washington's modern accomplice liability statute. The more recent state intermediate appellate court cases are also less authoritative than the clear statements of Washington's highest court. We are satisfied that the government's cited case law is less authoritative than the more recent Washington Supreme Court cases that indicate a clear distinction between the mental states of intent and knowledge.

In the face of the clear statutory language and the most authoritative state case law, the government argues as a fallback that—even if there is a formal distinction between the state and federal mens rea requirements—in practice, Washington's law does not "extend significantly beyond" its federal analogue for purposes of categorical comparison. *Duenas-Alvarez*, 549 U.S. at 193. Whatever the metaphysical merit of the government's attack on the distinction between intent and knowledge, we have held that, "where, as here, a state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination' is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime." *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (quoting *Duenas-Alvarez*, 549 U.S. at 193). Because the difference in breadth

is apparent on the face of the statute, we must conclude that Washington's statute is broader than its federal analogue.

Finally, the government makes a pragmatic argument that, under Valdivia-Flores's proposed application of the categorical approach, "no Washington state conviction can serve as an aggravated felony at all because of [the] accomplice liability statute" and that such a result "cannot have been Congress's intent." The government here merely joins a chorus of those who "have raised concerns about [the] line of decisions" applying the categorical approach, "[b]ut whether for good or for ill, the elements-based approach remains the law." *Mathis v. United States*, 136 S. Ct. 2243, 2257 (2016). Indeed, Justice Kennedy wrote separately in *Mathis* to note specifically that Congress "could not have intended vast . . . disparities for defendants convicted of identical criminal conduct in different jurisdictions"; but he concurred in the opinion that held that the categorical approach required just that result. *Id.* at 2258 (Kennedy, J., concurring). As an inferior court, we must follow suit.

Under a straightforward application of the categorical approach, Washington's drug trafficking statute is overbroad compared to its federal analogue, and Valdivia-Flores's conviction cannot support an aggravated felony determination.[3]

---

[3] Our dissenting colleague rejects potential differences between Washington and federal aiding and abetting liability on the ground that we should look no further than the state statute defining the principal offense of drug trafficking, which does match its federal analogue. But as the dissent points out, "conviction of aiding and abetting is tantamount to conviction of the underlying offense." It is for just that reason that, under the categorical approach, "the criminal activities of . . . aiders and abettors of a generic" offense "must themselves fall within the scope of

## C

The district court's ruling, however, was based on a somewhat alternative analysis: applying the *modified* categorical approach, which permits a court to look at the documents of conviction. Using those, the district court determined that Valdivia-Flores was, in fact, convicted as a principal rather than an accomplice and so fell within the federal generic drug trafficking prohibition.

It is only "[i]n a narrow range of cases," however, "when the statute at issue is divisible," that a court "may employ" the modified categorical approach to look at the underlying documents of conviction.[4] *Ramirez v. Lynch*, 810 F.3d 1127, 1131 (9th Cir. 2016). Where a "statutory phrase . . . refers

the [analogue] federal statute." *Duenas-Alvarez*, 549 U.S. at 190. The test under *Taylor* is straightforward in this context: "[i]f the state statute criminalizes conduct that would not constitute a drug trafficking offense under federal . . . law, then a prior conviction under that statute does not categorically qualify" as an aggravated felony. *United States v. Valdavinos-Torres*, 704 F.3d 679, 691 (9th Cir. 2012) (internal quotation marks omitted). Because the Washington statute *does* criminalize conduct that would not constitute a drug offense under federal law—due to the distinct aiding and abetting definitions—it is overbroad. That we have rejected an overbreadth challenge to this Washington statute before is irrelevant because such challenge was based on an argument unrelated to the overbreadth of the aiding and abetting component of the statute. *See United States v. Burgos-Ortega*, 777 F.3d 1047, 1052 (9th Cir. 2015) (considering an overbreadth challenge because the Washington statute did not include same exemption for "administering" a drug as its federal analogue).

[4] The dissent argues "that documents in the record relevant to Valdivia-Flores' conviction leave little doubt that he was convicted as a principal and not as an accomplice." We may not consider such documents, of course, if the statute is not divisible.

to multiple, alternative means of commission" of the crime, it must "be regarded as indivisible if the jurors need not agree on which method of committing the offense the defendant used." *Rendon*, 764 F.3d at 1085.

Washington law is clear that jurors need not agree on whether a defendant is a principal or accomplice. *See State v. Hoffman*, 804 P.2d 577, 605 (Wash. 1991) ("[I]t is not necessary that jurors be unanimous as to the manner of an accomplice's and a principal's participation as long as all agree that they did participate in the crime."). Because a jury need not distinguish between principals and accomplices, the drug trafficking statute is not divisible so far as the distinction between those roles is concerned, so the modified categorical approach may not be applied, and it was error for the district court to do so.[5]

## IV

Because Valdivia-Flores's drug trafficking conviction does not qualify as an aggravated felony under the categorical approach, it cannot support the asserted basis for Valdivia-Flores's 2009 removal. Valdivia-Flores was therefore prejudiced from his inability to seek judicial review for that removal. He thus satisfies all three elements of 8 U.S.C. § 1326(d), and his collateral attack on the underlying deportation order should have been successful.

The judgment of the district court is therefore **REVERSED** and the case **REMANDED** for further proceedings consistent with this opinion.

---

[5] That conclusion comports with our prior holding regarding federal aiding and abetting liability outside of the immigration context, where we have held that "[a]iding and abetting . . . is simply one means of committing a . . . crime." *Garcia*, 400 F.3d at 820.

O'SCANNLAIN, Circuit Judge, specially concurring.

Although the result in this case is dictated by the case law of the Supreme Court and our Circuit, I write separately to highlight how it illustrates the bizarre and arbitrary effects of the ever-spreading categorical approach for comparing state law offenses to federal criminal definitions. I am hardly the first federal circuit judge to express puzzlement at how the categorical approach has come to be applied. *See, e.g.*, *United States v. Doctor*, 842 F.3d 306, 312 (4th Cir. 2016) (Wilkinson, J., concurring); *United States v. Faust*, 853 F.3d 39, 60 (1st Cir. 2017) (Lynch, J., concurring); *United States v. Chapman*, 866 F.3d 129, 136 (3d Cir. 2017) (Jordan, J., concurring). That criticism arises largely in relation to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)—in which context the categorical approach was created to apply sentencing enhancements based on prior state convictions—but the case before us illustrates the much broader reach of its peculiar consequences.

Almost three decades ago, in *Taylor v. United States*, 495 U.S. 575 (1990), the Supreme Court developed the categorical approach in the context of ACCA, which imposes heightened mandatory minimums for serious repeat offenders. *See* 18 U.S.C. § 924(e). Two decades later, it had become clear that the same approach applied to determine what state crimes fell within certain categories enumerated in the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq. See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 187 (2007). Several justices of the Supreme Court have expressed concern about the "arbitrary and inequitable results produced by applying" the categorical approach to the ACCA sentencing scheme. *Mathis v. United States*, 136 S. Ct. 2243, 2258 (2016) (Kennedy, J., concurring)

(noting similar criticisms raised in dissent by Justices Ginsburg, Breyer, and Alito). The results can be even more arbitrary in other contexts, including the case before us involving a collateral attack on a removal order.

As Judge Wilkinson observed in his criticism of the present state of the categorical approach, when it comes to ACCA and sentencing, a district court "has various tools to impose a stricter sentence if it believes that the categorical approach is ignoring a violent criminal history or disserving the general aims of sentencing." *Doctor*, 842 F.3d at 317 (Wilkinson, J., concurring). Under the advisory sentencing guidelines, a district court can depart outside the guidelines to correct for a particularly unjust or absurd application of the categorical approach.

In the context of the case before us, however, there is no way to remedy an especially absurd result of applying the categorical approach. When a removal premised on a prior state conviction for an aggravated felony is collaterally attacked years later, a court's only role once reaching the merits is to apply the categorical approach and to determine if the state statute of conviction was a categorical match with its federal analogue. As today's decision makes clear, if the challenger is clever enough to find some space in the state statutory scheme that lies outside the federal analogue, he can effectively void that prior removal for purposes of his present illegal reentry prosecution—even though the challenger admits that the actual conduct underlying his state conviction falls at the heart of the federal analogue. There is no discretion to be exercised.

Congress made clear its desire to remove aliens who have committed "aggravated felonies," which it expressly defined to include any "drug trafficking crime," 8 U.S.C. § 1101(a)(43)(B), meaning "any felony punishable under the

Controlled Substances Act," 18 U.S.C. § 924. Nobody contests that Valdivia-Flores possessed heroin with intent to deliver it, nor that such conduct is indeed a felony punishable under the Controlled Substances Act. There is no reason to doubt, then, that Valdivia-Flores actually *did* commit an aggravated felony. Because of the judicially-created categorical approach and a quirk in the drafting of Washington's statutory scheme, however, he escapes the consequences that Congress intended for such conduct.

Whatever the merits of the Supreme Court's rationale for imposing the categorical approach on sentencing under ACCA, where judges have discretion to correct for particularly arbitrary and unjust results, the effect is far more pernicious in cases such as this one where there is no chance for correction. Shouldn't it be possible to have a more "practical reading" of the Immigration and Nationality Act so that, "[w]hen it is clear that a defendant necessarily admitted or the jury necessarily found that the defendant committed the elements of [the generic federal crime], the conviction should qualify" for purposes of classifying it as an aggravated felony? *Descamps v. United States*, 133 S. Ct. 2276, 2295 (2013) (Alito, J., dissenting). If the Supreme Court is unwilling to revisit the categorical approach for cases such as this one, Congress should consider clarifying whether it truly intended radically different treatment for aliens "convicted of identical criminal conduct in different jurisdictions." *Mathis*, 136 S. Ct. at 2258 (Kennedy, J., concurring).

RAWLINSON, Circuit Judge, dissenting:

Jose Valdivia-Flores was convicted of possession with intent to deliver a controlled substance in violation of Wash. Rev. Code § 69.50.401. The majority describes our task as "determin[ing] whether Valdivia-Flores' conviction under Wash. Rev. Code § 69.50.401 was for an aggravated felony." *Majority Opinion*, p. 10. Yet, inexplicably, the majority completely fails to address that statute.

In determining whether Valdivia-Flores was convicted of an aggraved felony, we compare the state statute of conviction to the generic federal definition of possession with intent to deliver a controlled substance. *See Roman-Suaste v. Holder*, 766 F.3d 1035, 1038 (9th Cir. 2014). The Immigration and Nationality Act (INA) defines the term "aggravated felony" to include "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B); *see also Roman-Suaste*, 766 F.3d at 1038. The phrase "drug trafficking crime" supplies the generic federal description of possession of a controlled substance with intent to deliver, defined in pertinent part as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)." 18 U.S.C. § 924(c)(2); *see also Roman-Suaste*, 766 F.3d at 1038. A "felony" includes an offense for which the maximum term of imprisonment is "more than one year." 18 U.S.C. § 3559(a)(5); *see also Roman-Suaste*, 766 F.3d at 1038. Ultimately, "under the plain language of these provisions, a conviction qualifies as an aggravated felony when it is for an offense that the Controlled Substances Act (CSA) makes punishable by more than one year's imprisonment." *United States v. Gonzalez-Corn*, 807 F.3d

989, 993 (9th Cir. 2015) (citations and internal quotation marks omitted).

The pertinent CSA provision in this case, provides: "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). The Washington statute underlying Valdivia-Flores' 1997 conviction, stated in pertinent part:  "Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." Wash. Rev. Code § 69.50.401(a) (1997).

Washington's aiding and abetting statute stated at the time of Valdivia-Flores' conviction:  "A person is an accomplice of another person in the commission of a crime if . . .[w]ith knowledge that it will promote or facilitate the commission of the crime, he . . .[s]olicits, commands, encourages, or requests such other person to commit it; or [a]ids or agrees to aid such other person in planning or committing it." Wash. Rev. Code § 9A.08.020(3)(a)(i)-(ii) (1997).

Valdivia-Flores does not vigorously challenge the notion that a drug trafficking offense constitutes an aggravated felony. Rather, he contends that our categorical analysis should focus on Washington's aiding and abetting statute, which he argues is implicit in Washington's drug trafficking statute.  Valdivia-Flores relies heavily on the Supreme Court's decision in *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183 (2007).  He further contends that the implicit aiding and abetting liability is overbroad and indivisible.

The majority goes astray by accepting Valdivia-Flores' argument.  Reliance on *Duenas-Alvarez* as authority to support focusing our categorical analysis on Washington's aiding and abetting statute is misplaced. In *Duenas-Alvarez*, the Supreme Court held that a "theft offense" includes the crime of aiding and abetting a theft offense. 549 U.S. at 189–90. However, the statute at issue provided in pertinent part:

> Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, *or any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing, is guilty of a public offense.*

*Id.* at 187 (quoting Cal. Veh. Code Ann. § 10851(a)) (some emphasis added). Importantly, the language supporting an analysis of aiding and abetting liability came directly from the statute underlying Duenas-Alvarez's conviction. *See id.* Thus, the Supreme Court compared Cal. Veh. Code Ann. § 10851(a), the statute of conviction, to the generic definition of a theft offense, consistent with a traditional categorical analysis. *See id.* at 189–94.

The majority compares Washington's aiding and abetting statute—a statute that Valdivia admitted is a separate statute from the statute of conviction—to the generic definition of aiding and abetting.  *See Majority Opinion*, pp. 11–13.  As the district court observed in *United*

*States v. Gonzalez-Altamirano*, No. 14CR 750-BEN, 2014 WL 7047636 at \*5 (S.D. Cal. Dec. 12, 2014):

> Defendant . . . asks the Court to go beyond the Washington statute of conviction, look at a different statute, find that it impliedly applies to every offense, and find the application of the implication carries the conviction beyond the federal generic drug trafficking offense. To borrow a phrase, this argument requires the sort of theoretical possibility that was cautioned against in *Gonzalez v. Duenas-Alvarez. . . .*

(citation and internal quotation marks omitted). Tellingly, as in *Gonzalez-Altamirano*, the majority cites no precedent skipping over the actual statute of conviction to plug a completely different statute into the *Taylor* analysis. *See* 2014 WL 7047636 at \*4. Further detracting from the majority's conclusion, we have explicitly determined that a conviction under Wash. Rev.Code § 69.50.401 qualifies as a conviction for an aggravated felony in a different context. *See United States v. Burgos-Ortega*, 777 F.3d 1047, 1054–55 (9th Cir.), *cert. denied*, 135 S. Ct. 2848 (2015) (upholding a sentence enhancement). Unlike the majority, we rejected the argument that the statute was categorically overbroad. *See id.*

It is also worth mentioning that documents in the record relevant to Valdivia-Flores' conviction leave little doubt that he was convicted as a principal and not as an accomplice. The information charged Valdivia-Flores with unlawfully and feloniously possessing with the intent to manufacture or deliver heroin in violation of Wash. Rev.Code § 69.50.401(a)(1). The Plea Statement signed by Valdivia-

Flores contains a handwritten acknowledgment that he was charged with possession of heroin with intent to deliver, stating the elements of the crime, and describing in his own words that he did "unlawfully possess with intent to deliver Heroin" knowing that it was a controlled substance. In a stipulation of facts provided to the district court, Valdivia-Flores agreed that on August 8, 1997, he suffered a felony conviction for Possession with Intent to Deliver Heroin, in violation of Wash. Rev. Code § 69.50.401(a). Finally, the state court's judgment and sentence documented that Valdivia-Flores was convicted of Possession with Intent to Deliver Heroin in violation of Wash. Rev. Code § 69.50.401(a)(1). Noticeably, no evidence in the record refers to Wash. Rev. Code § 9A.08.020 or suggests that Valdivia-Flores was convicted as an accomplice.

In my view, the majority has impermissibly veered away from the statute of conviction to find overbreadth based on its analysis of a statute that was not part of the prosecution or conviction in this case. Our analysis should have been on the actual statute of conviction, Wash. Rev. Code § 69.50.401, which meets the definition of an aggravated felony.

Indeed, our precedent makes it crystal clear that conviction of aiding and abetting is tantamount to conviction of the underlying offense. *See Salazar-Luviano v. Mukasey*, 551 F.3d 857, 860 n.2 (9th Cir. 2008) ("Salazar's aiding and abetting conviction is technically a violation of 18 U.S.C. § 2. That Salazar was convicted of aiding and abetting, however, makes him liable as a principal of the underlying offense."); *see also Ortiz-Magana v. Mukasey*, 542 F.3d 653, 659 (9th Cir. 2008) ("[Because] there is no material distinction between an aider and abettor and principals *in any jurisdiction of the United States* . . . aiding and abetting

an [offense] is the functional equivalent of personally committing that offense [and] that offense . . . constitutes an aggravated felony.") (emphasis added).

In *Sales v. Sessions*, 868 F.3d 779, 780 (9th Cir. 2017), we recently considered a conviction for second degree murder under California law.  We noted that it was undisputed that a conviction for second degree murder is an aggravated felony.  *See id*.  We then decided that a conviction for aiding and abetting second degree murder "also qualifies as an aggravated felony."  *Id*.  We clarified that "absent a showing that the law has been applied in some 'special' way, a conviction in California for aiding and abetting a removable offense is also a removable offense." *Id*.  We eschewed the defendant's reliance on *Duenas-Alvarez*, as we should do in this case because our holding in *Duenas-Alvarez* does not apply to our *Taylor* analysis here. *See id*.

In *Salazar-Luviano* and in *Ortiz-Magana*, we discerned no reason to delve into the intricacies of the aiding and abetting statutes.  Quite the opposite.  As we explained in *Salazar-Luviano* in rejecting the government's attempt to address the elements of the aiding and abetting statute, "[t]he government's observation that aiding and abetting is a specific intent crime, is beside the point.  Aiding and abetting is not a stand-alone offense–one convicted of aiding and abetting is guilty of the underlying substantive offense as if he committed it directly."  551 F.3d at 862 n.4 (citation, alteration and internal quotation marks omitted).  The same is true in this case.  Because aiding and abetting is not an offense in and of itself, the majority's focus on the elements of the Washington aiding and abetting statute is, as we previously noted, "beside the point."  *Id*.  I respectfully dissent.